CHIEF JUSTICE WILLIAMS
delivered the opinion op the court :
This was a suit by the Commonwealth to compel the defendant to pay into the revenue of the State fifty cents on the share of stock therein, as required by the act of Assembly of February 9, 1865 (Myers’ Supplement to the Revised Statutes, 482), and which is as follows:
“ § 1. That it shall be the duty of the officers or managers of the banking associations, which have or may hereafter be established within this State under the act of Congress, entitled ‘ An act to provide a national currency secured by a pledge of United States bonds, and to provide for the circulation and redemption thereof,’ to file with the Auditor of Public Accounts a statement, verified by affidavit of thé presiding officer or cashier of the association, showing the amount of capital stock, and the *100 number of shares into which the same may be divided; and it shall be the duty of such officers or managers, annually, on the first Monday in July, to pay into the public treasury of the State, in aid of the Sinking Fund, a tax of fifty cents on each share thereof, equal to one hundred dollars of the capital stock of said association : Provided, however, That if the capital stock shall at any time be increased or diminished, it shall be the duty of such association to revise and amend the statement required by this act, so as to exhibit, at ail times, the true amount of capital stock held by such association.”
The only other State statute applying to this controversy is chapter 83, 2 Revised Statutes, section 1, article 2, page 239, as follows r
“ Specific taxation on real and personal estate. — On bank stock, or stock in any moneyed corporation of loan or discount, fifty cents on each share thereof equal to one hundred dollars of stock therein owned by individuals, corporations, or societies.”
And article 10 of said chapter, 2 Revised Statutes, 266, as follows:
“ Payment of revenue by banks and other corporations into the treasury. — § 1. The cashier of a bank and the treasurer of any other institution whose stock is taxed, shall, on the first day of July in each year, pay into the treasury the amount of tax due. If such tax be not paid, the cashier and his sureties shall be liable for the same and twenty per cent, upon the amount, and the said bank or corporation shall thereby forfeit the privileges of its charter.”
No bank or stockholder in the State pays less than fifty cents on each share of one hundred dollars in the capital stock of a bank, by either a, general or special statute. There is, then, no question of inequality of this attempt *101 ed taxation of shares in the national banks and the State banks; no discrimination against shareholders in the national banks and in favor of shareholders in the State banks; but the former stands upon an exact footing of the most favored of the latter.
The only question, then, is this mode of taxation contrary to the first and second provisions of section 41 of the Congressional act of June 3, 1864, chapter 106, entitled “ An act to provide a national currency,” &c., as follows :
“ Provided, That nothing in this act shall be construed to prevent all the shares in any of the said associations, held by any person or body corporate, from being included in the valuation of the personal property of such person or corporation in the assessment of taxes imposed by or under State authority, at the place where located, and not elsewhere, but not at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State: Provided, That the tax so imposed under the laws of any State, upon the shares of any of the. associations authorized by this act, shall not exceed the rate imposed upon the shares in any of the banks organized under authority of the State where such association is located.”
As was said by the United States Supreme Court, in VanAllan vs. The Assessors (3 Wallace, 584), “ the tax on the shares is not a tax on the capital of the hank;” and “ that the States possess the power to tax the whole of the interest of the shareholder in the shares held by him in these associations within the limits prescribed by the act authorizing their organization.”
Nothing can, therefore, be clearer than that the shareholders in these national banks, located in this State, can be made to pay the same tax that shareholders in the *102 banks authorized by the State laws are compelled to pay, to-wit: fifty cents on each share of one hundred dollars. Now, this State statute does not tax the capital of the banks, but the shares of one hundred dollars; and whether these shares be worth fifty dollars or two hundred dollars each, matters not, because all shares of one hundred dollars in every bank of the State is taxed the same, regardless of their marketable value; and there is heré, as elsewhere, a great difference in the value of shares or stock in our different State banks, some being worth largely more than others; and 'so it is with the national banks; still all are required to pay and to be alike assessed.
As the tax is laid upon the shares, and not upon the capital of the bank, it is really and bona fidcly a tax upon the shareholders; but as many of these are non-residents, and could not be reached by the laying taxes upon their shares or stock, and looking alone to them for payment, the State laws require the cashier of the banks to pay this tax upon their shareholders. If there be any provision of the congressional enactment authorizing these associations to prevent the States requiring of the officers of the association to pay the tax levied upon its shareholders, it has not been pointed out, nor seen by us. The great if not sole object of Congress was to secure the national bank associations from a discriminating tax, and not that the tax should be collected in a particular manner.
If, therefore, the State should only tax shareholders of these associations the same as shareholders in their own banks, the mode of obtaining payment was not regarded material; and especially should this not be the case vs hen not only the tax, but the mode of obtaining it, is precisely the same as it is in this case; for the State requires of *103 the officers of her State institutions to pay the tax due by their respective shareholders.
In the case of VanAllan vs. The Assessors, the Supreme Court of the United States reversed the judgment of the appellate court of New York sustaining the right to tax the shares in the national banks under the State statute of New York of March 9, 1865, because said statute provided that such shares should be taxed as personal property, and did not provide they should only be taxed at the same rates that shares in the State banks were; but, on the contrary, it appeared that shares in the New York State banks were not taxed at all, because the capital of such banks were taxed.
So, in Bradley et al. vs. Illinois, decided by the Supreme Court of the United States in 1867, reversing the decision of the Supreme Court of Illinois, holding shares in national banks taxable under the Illinois statute of February 14, 1857, which did not tax the shares, but the capital of her State banks, together with the surplus profits or reserved funds.
In the case of New York ex rel. D. Duer vs. The Commissioners of Taxes for the City and County of New York, and The Same ex. rel. R. Mead vs. The Same, the Supreme Court of the United States affirmed the judgment of the appellate court of New York, sustaining a tax on the shares in the national banks without deducting therefrom the amount of the capital invested in United States bonds, not taxable under State authority, because it held these were only attempted to be taxed as other personal property was taxed under the laws of New York, and not more than was assessed upon shares of State banks. And in Wright, auditor, and Meyer, treasurer, of Marion county vs. Stelz, the Supreme Court of Indiana held, that no tax could be levied on the shares in the national *104 banks under the Indiana statute; for, to use their own language, “the plain reason that no such tax is imposed on the shares of any banks organized under the authority of the State,” as, “ we tax our own banks upon their paid in capital, and do not tax the shareholders thereof upon the value of their shares.” (Laws of 1861, p. 17.) And in Frazer vs. Siebern et al., the Supreme Court of Ohio held, that the shares in national banks could not be assessed under the statute of that State, because it did not provide for a deduction for the capital invested in government bonds not subject to State taxation, whilst such deduction was made as to the State banks, and which were taxed upon their capital.
Thus it will be seen that no adjudication of either the Supreme Court of the United States, or any State, has as yet decided, that where a State taxes the shares and not the capital of her own banks, and then looks to the officers of the bank to pay this tax, instead of pursuing each individual stockholder, that the same tax, to be collected the same way, may not be assessed upon the shares in the national banks.
In Louisville Savings Bank, &c., vs. Commonwealth (14 B. Mon., 409), this court held, that, notwithstanding there was no specific clause in the charter of the appellant providing for a tax of fifty cents on each share of one hundred dollars, as was the case in all the banks of circulation, that still the bank officer was liable to pay the fifty cents on each share, as provided in section 1, article 2, and in section 1, article 10, chapter 83, Revised Statutes, before quoted.
This tax of fifty cents on the share is the least and only tax assessed upon the shares or shareholders of our State banks, and the bank officers are required to pay this for their shareholders. This policy is obviously *105 both reasonable and convenient; it is but reasonable and fair that the State should have this tax from the non-resident as well as resident shareholders, in associations which exist by her laws, and have franchises peculiarly beneficial and exclusive conferred by her .authority. What other convenient and certain mode of getting this from the non-resident shareholders, but by making it the duty of the officer of the institution to pay for its stockholders ? But it is convenient, even if all the stockholders were residents; for then these would be scattered through the various counties of the State, as the certificates of stock are transferable.
When the State shall only tax shares in the national banks at the same rates, and shall collect the tax by the same means as applicable to the State banks, every substantial requirement of the national bank act of Congress has been complied with.
To suppose that Congress intended that the States should exercise this sovereign power, as to taxing shares in national banks, that they, by their State laws, exercise as to their own banks’ shareholders, and then to quibble about the means of collecting the tax, is beneath the dignity of the question and the high source of the enacting power.
When the wants of the governments, both State and National, were limited, their revenues abundant, though derived from but few sources, and taxes comparatively light, these revenue laws were not so closely scanned; but now that taxes are enormous, the demands great, and resources not adequate thereto, moneyed institutions and capitalists, ever Argus-eyed, are searching for every pretext to escape the public burdens; but as they are permitted to shove these from their shoulders, they become proportionately heavier upon the producing and *106 humbler classes, and do them an enormous injustice; hence courts, neither Federal nor State, should lend a too listening ear to their clamor to escape a reasonable and just proportion of the taxes so essential to liquidate both State and National obligations.
Believing that our State laws, so far from conflicting with the Congressional enactment, are in strict harmony with it, and that the shares in the national banks are legally liable to a tax of fifty cents on each share of one hundred dollars, and that the bank officers can be legally compelled to pay these taxes for their respective shareholders, the judgment of the circuit court dismissing-the petition is reversed, with directions for farther proceedings to assess the shares in said First National Bank at fifty cents for each share of one hundred dollars, and to adjudge the amount against the proper officers, as provided in our State enactment.
It would be wholly foreign from the objects of Congress to attempt to enact by what means the States should collect their taxes.