## PELTON *v.* NATIONAL BANK.

1. Although for purposes of taxation the statutes of a State provide for the valuation of all moneyed capital, including shares of the national banks, at its true cash value, the systematic and intentional valuation of all other moneyed capital by the taxing officers far below its true value, while those shares are assessed at their full value, is a violation of the act of Congress which prescribes the rule by which they shall be taxed by State authority.
2. In such case, on the payment or the tender of the sum which such shares ought to pay under the rule established by that act, a court of equity will enjoin the State authorities from collecting the remainder.

APPEAL from the Circuit Court of the United States for the Northern District of Ohio.

The facts are stated in the opinion of the court.

*Mr. John C. Grannis* and *Mr. S. O. Griswold* for the appellant.

*Mr. R. P. Ranney* for the appellee.

MR. JUSTICE MILLER delivered the opinion of the court.

The Commercial National Bank of Cleveland, Ohio, organized under the act of Congress of 1864, creating a national banking system, and by virtue thereof entitled to sue in the circuit courts of the United States, brought this bill in equity to enjoin Pelton, the treasurer of the county of Cuyahoga, in which the city of Cleveland is situate, from collecting a tax alleged to be illegal. The chief ground of objection to the tax set out in the bill, and that which is mainly relied on in argument here, is, that the act of the Ohio legislature of April 12, 1877, entitled " An Act for the equalization of bank shares for taxation," under which the tax complained of was finally assessed, is in conflict with the Constitution of Ohio on the subject of the uniformity of taxation, and therefore void.

It is also distinctly alleged that the tax, as assessed, is greater than that assessed on other moneyed capital in the hands of individuals, citizens of that State, and is, therefore, in conflict with sect. 5219 of the Revised Statutes of the United States.

The decree below was in favor of the complainant, and Pelton appealed to this court.

It is an appropriate duty, which this court is called upon to perform very often, to protect rights founded on the Constitution, laws, and treaties of the United States, when those rights are invaded by State authority. But it is a very different thing for this court to declare that an act of a State legislature, passed with the usual forms necessary to its validity, is void because that legislature has violated the Constitution of the State.

It has long been recognized in this court that the highest court of the State is the one to which such a question properly belongs; and though the courts of the United States, when exercising a concurrent jurisdiction, must decide it for themselves, if it has not previously been considered by the State court, it would be indelicate to make such a decision in advance of the State courts, unless the case imperatively demanded it. We

will, therefore, inquire first whether the decree of the Circuit Court can be sustained on the other ground.

The bill states very distinctly that the principle on which the valuation of the shares of the bank for taxation is made "destroys the uniformity of the rule fixed by the Constitution, and violates the obligation thereby imposed to treat all property alike, to the end that all property may bear an equal burden of taxation, and is subversive of the act of Congress allowing such shares to be taxed and intended to protect the owners thereof from greater burdens than were imposed on other moneyed capital at the place where the bank was located." "The necessary effect," it is added, "of the proceedings had in the assessment and levy of the taxes standing against the shareholders of your orator, and now about to be enforced, has been to deprive such shareholders, both in the matter of valuation and equalization, of all benefit of the Constitution and general laws of the State, by which only uniformity in the burden of taxation upon all descriptions of property could be secured, to take from them the security afforded by the limitation in the act of Congress and to impose upon them such excessive exactions as to make the franchises granted by said act comparatively useless." The answer, by way of denial, says that "the taxes mentioned in said complainant's bill, assessed upon the shares of said complainant's banking association, are not taxed at a greater rate than is imposed by the State of Ohio upon other moneyed capital in the hands of individual citizens of said State resident in the city of Cleveland, where said banking association is established and located."

It is thus very clear that the question, whether the taxation of which the bank complained was a tax on its shares greater than that on other moneyed capital invested in Cleveland, was fairly raised by the pleading.

The argument is advanced here which we considered in *People v. Weaver* (100 U. S. 539), namely, that if the amount of tax assessed on these bank shares is governed by the same percentage on the valuation as that applied to other moneyed capital, the act of Congress is satisfied, though a principle of valuation is adopted by which inequality and injustice to the

owners of them must necessarily result. We do not propose to go over that argument again. The cases were considered together in conference, because they involved that principle. It is sufficient to say that we are quite satisfied that any system of assessment of taxes which exacts from the owner of the shares of a national bank a larger sum in proportion to their actual value than it does from the owner of other moneyed capital valued in like manner, does tax them at a greater rate within the meaning of the act of Congress.

It is not asserted that any different percentage on the valuation established was applied to these two classes of capital. The bill very clearly shows that the source of the evil was in the unequal valuation.

Taking the answer, with the meaning which the counsel who drew it attaches in argument here to the words, " taxed at a greater rate," it may be said to amount, as a negative pregnant, to an admission that the valuation was unequal, as charged in the bill. Not only so, but it is not denied in argument that while all the personal property in Cleveland, including moneyed capital not invested in banks, was in the assessment valued far below its real worth, say at one-half or less, the shares of the banks, after deducting the real estate of the banks separately taxed, were assessed at their full value, or very near it. The only witness who testified on the subject in this case at all was the auditor of the county of Cuyahoga for the years 1876 and 1877, who had been for many years previously an employé in the auditor's office. He says that, as county auditor, he was a member of the board of county equalization, and acted as such in equalizing during those years the valuation of the shares of the various national and other banks; that the valuation placed on the shares of national banks was higher in proportion than the valuation on other personal property, including banking capital. He says that the matter was talked over in the board, and it was their aim to make the valuation higher, and that their valuation of national bank shares was intentionally higher than the assessed value returned by private banks.

It is necessary here to examine into the mode of assessing the tax as provided in the act of 1877, which related solely to the tax on bank shares. The first section required the cashier

of every incorporated bank to make report to the county au-
ditor of the names and residences of its shareholders, the par
value of each share, and other facts necessary to enable the
auditor to ascertain the value of those shares. The second sec-
tion required the auditor to assess them at their true value in
money, after deducting the real estate, and to transmit the
assessment with the report of the auditor to the annual board
of equalization of the county in which the bank was located.
This board was composed, in cities of the class to which Cleve-
land belonged, of the county auditor and six citizens appointed
by the city council. By the third section this board was au-
thorized to hear complaints and equalize the valuation of the
shares of such banks or banking associations, as fixed by him,
and with full authority to equalize such shares according to
their true value in money. It is to be remembered that the
witness whose testimony we have stated was the county auditor
who made the first assessment or valuation of these shares, and
he was a member of this city board which had authority to
equalize that valuation. It was of this city board he was
speaking when he said that they had assessed bank shares gen-
erally higher than other personal property, including, of course,
other moneyed capital; and that they had assessed the shares
of the national banks higher than private banks, and that it
was their aim to do so. It is also important to observe in refer-
ence to another view of the question, presently to be considered,
that this discrimination was neither an accident or a mistake,
nor a rule applied only to this bank, but that it was a principle
deliberately adopted to govern their action in the valuation of
all the shares of national banks, and was applied to them all
without exception. It appears by the testimony of this witness
that there were seven national banks in the city of Cleveland
whose shares, as equalized by the city board for taxation,
amounted to $3,236,500, to all of which this rule of valuation,
making their taxes much higher than on other moneyed capi-
tal, was applied, and that this was done for two years at least,
and probably many more.

This act of 1877, however, provided another board of equali-
zation, composed of the auditor of state, treasurer of state, and
attorney-general, to whom all the assessments of bank shares

made by the county and city boards were to be referred, and to whom no other property was referred, for an equalization, which included the whole State. This board could do no more than increase or diminish the valuation of such shares for each county and city, so as to make them conform to some standard of equality among themselves which that board might adopt. But the result of their action must be such that it did not increase or diminish the aggregate value of the amount returned by the county auditors of the whole State more than $100,000.

This board, for the taxes now in contest, increased the valuation of the shares of the complainant $250,000 above the sum of $912,000, at which it had been assessed by the county board, and it increased the valuation of the shares of all the national banks of Cleveland from the sum of $3,236,500 to $4,046,045.

It is thus seen that the auditor and the city board of equalization valued these shares higher in proportion to other moneyed capital in Cleveland to an extent which the witness does not state, but which may be supposed to be thirty per cent, as it is shown to be in comparison with real estate; and the State board added about one-fourth to that, so that the tax on the national bank shares, against which relief is sought in this suit, is between fifty and sixty per cent on its real value greater than on other moneyed capital, and, therefore, to that extent forbidden by the act of Congress.

For this injustice and this violation of the law there ought to be some remedy. To the specific one of an injunction by a suit in chancery, and, indeed, to any remedy by the bank, many objections are raised; but as all of them have been considered and overruled in the case of *Cummings* v. *National Bank* (*infra*, p. 153), which was argued at the same time this case was, it is unnecessary to repeat here what is said in that case.

As the complainant has paid so much of the tax as was not in violation of the act of Congress, we think the decree of the Circuit Court enjoining the collection of the remainder was right.

*Decree affirmed.*

MR. CHIEF JUSTICE WAITE dissented.