EVANSVILLE NAT. BANK, of Evansville, Indiana, *v.* BRITTON, Treasurer, etc.

*(Circuit Court, D. Indiana. 1881.)*

1. NATIONAL BANKS — STATE TAXATION — REVENUE LAW OF INDIANA OF 1872 — REV. ST. § 5219.

By the revenue law of Indiana of 1872, capital represented by credits, which include money at interest within or without the state, is not taxed for its full or fair value, but only on the balance which may remain after deducting the amount of the tax-payer's *bona fide* indebtedness; while capital represented by national bank stock is taxed according to its fair value, without allowance for debts. *Held,* that the law is in conflict with section 5219 of the Revised Statutes, and therefore invalid. *Held, also,* that only such shareholders are entitled to relief as are subject to taxation in the state upon their credits, and who, at the time of the assessment of taxes under this law, had debts which were not deducted from their credits, because they had none, and which were not deducted from the valuation of the bank shares, because the state law would not permit it to be done.

2. SAME — ILLEGAL TAXATION — PARTIES — INJUNCTION.

The bank, under the law of the state, is a proper party to institute a suit for the purpose of enjoining the collection of taxes illegally assessed upon shares of its stock in the hands of the respective owners.

HARLAN, Justice. The object of this suit is to obtain a perpetual injunction against the collection of the state, county, road, and school tax assessed in Vanderburgh county, Indiana, for the year 1879, upon the shares of complainant's stock in the hands of its respective owners. The suit proceeds upon the general ground that some of the provisions of the revenue statute of this state, passed in 1872, and under the authority of which the assessment in question was made, are in conflict with section 5219 of the Revised Statutes of the United States, which permits, as did previous legislation, state taxation of national bank shares, subject to two restrictions, one of which is that such taxation "shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state." Some of the papers connected with the valuation of these shares indicate an assessment against the bank itself; but an examination of all the papers satisfies me that the assessment was intended to be, not against the bank, in its corporate capacity, but against the several shareholders, upon the shares held by them respectively. Still, the right of the bank to institute the present suit cannot be doubted. The state law imposes upon the bank officers the duty to retain, out of dividends belonging to the respective shareholders, a sum sufficient to meet the taxes assessed upon their shares; and the law further subjects the officer, who pays dividends to a

stockholder before the taxes upon his shares are satisfied, to personal liability for such taxes. What was said in *Cummings* v. *Nat. Bank*, 101 U. S. 157, may be repeated here:

"The bank, as a corporation, is not liable for the tax, and occupies the position of a stakeholder, on whom the cost and trouble of the litigation should not fall. If it pays, it may be subjected to a separate suit by each stockholder. If it refuses, it must either withhold dividends and subject itself to litigation by doing so, or refuse to obey the law and subject itself to suit by the state. It holds a trust relation, which authorizes a court of equity to see that it is protected in the exercise of the duties appertaining to it. To prevent multiplicity of suits, equity may interfere."

Passing this preliminary point, I come to the consideration of certain questions arising upon the merits, as to some of which I have had very great difficulty.

In *People* v. *Weaver*, 100 U. S. 539, it was ruled that the inhibition upon state taxation of national bank shares "at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens," had reference to the entire process of assessment, and prevented as well an unequal valuation of such shares, compared with other moneyed capital, as an unequal rate of percentage thereon. Consequently, a statute of New York, which prescribed an uniform *rate* of taxation upon personal property, but permitted the tax-payer to deduct his just debts from the aggregate value of his personal property, *other than shares of bank stock*, (from the value of which latter property no such deduction was allowed,) was held to work an illegal discrimination against moneyed capital invested in such shares. Such a mode of valuation, the supreme court of the United States held, had the effect to impose greater burdens upon moneyed capital invested in bank shares than upon other moneyed capital in the hands of individual citizens.

In *Pelton* v. *Nat. Bank*, 101 U. S. 146, the court said:

"It is sufficient to say that we are quite satisfied that any system of assessment of taxes which exacts from the owner of the shares of national bank stock a larger sum in proportion to their actual value than it does from the owner of other moneyed capital, valued in like manner, does tax them at a greater rate, within the meaning of the act of congress."

The fundamental inquiry, therefore, is whether the statute of Indiana prescribes any rule of taxation of moneyed capital which necessarily conflicts, or which, in its application, may conflict, with the act of congress permitting state taxation of national bank shares. In the prosecution of this inquiry I have examined with great care the numerous, and, in some respects, complicated, provisions of the act

of 1872. My examination has been conducted in the hope that I should be able to reconcile the state law, in all its parts, with the act of congress. But in that hope I have been disappointed. I am of opinion that the state revenue act establishes a rule of taxation which operates, in certain cases, to subject national bank shares to greater burdens than the same act imposes upon other moneyed capital in the hands of individual citizens of Indiana.

A very brief reference to the provisions of the state law will establish this proposition. The law provides for the taxation of national bank shares, in the hands of the respective owners, according to their fair cash or selling value. It excludes from the valuation of such shares any estimate whatever of the shareholder's debts. No allowance or deduction on that account is permitted. Although his debts may exceed the value of his national bank stock, he must pay taxes on the cash value of that stock, without reference to the amount of such indebtedness.

Turning, now, to the general provisions of the state law regulating the assessment and valuation of the personal property of individual citizens, other than bank shares, I find that each tax-payer is required to list, among other things, his "credits." 1 Rev. St. Ind. 1876, pp. 76, 81, §§ 15, 48. Under that head is included "money at interest, within or without the state." To that effect is the recent decision of the supreme court of this state in *Matter* v. *Campbell*, 71 Ind. 512. He is not taxed for the full or fair value of such credits, but only upon the balance which may remain after deducting the amount of his *bona fide* indebtedness, including his proportionate liability, as surety for others, arising from the inability or insolvency of the principal debtor, and for which he believes himself to be legally and equitably bound, but excluding all acknowledgments of indebtedness not founded on actual consideration, or made for the purpose of being deducted. 1 Rev. St. Ind. 86, §§ 53–4; *Matter* v. *Campbell*, 71 Ind. 512. Plainly, therefore, money capital represented by loans, or invested in "credits," is not taxed as money capital represented by national bank stock is taxed, viz., according to its fair value, without reference to the indebtedness of the tax-payer. Only so much of a tax-payer's credits is taxed as exceeds the amount of his *bona fide* indebtedness. A single illustration will show the operation of the state law in some cases of common occurrence. Suppose that A., having $10,000 in money, owing debts to the amount of $6,000, and having no credits, should invest that money in national bank shares. By the state law, as we have seen, he is required to pay taxes upon

the amount so invested, without deduction in any form of his indebtedness of $6,000. But if he should loan the $10,000 and take a note therefor, or if he should buy promissory notes with that money, thereby becoming the owner of credits, he will not be required to pay taxes upon the money value of his credits, but only upon $4,000, the difference between his credits and his indebtedness.

It is thus seen that, under the operation of the rule prescribed by the state law, moneyed capital, not invested in national bank shares, will, in such cases as the one supposed, be burdened with less taxation than the same amount of capital invested in such shares would be. Congress, in granting authority to the states to tax national bank shares, certainly did not intend to expose moneyed capital so invested to greater burdens than were imposed upon other moneyed capital in the hands of individual citizens. On the contrary, its purpose was, for all purposes of local taxation, to place moneyed capital, represented by national bank shares, upon the same footing with the most favored moneyed capital in the hands of individual citizens of any state exercising the power granted by congress. Here, the state law, by way of diminished taxation, accords to moneyed capital invested in credits, held by its citizens, privileges of a substantial character which it denies to capital invested in national bank shares.

The state law, in effect, holds out an inducement to invest in credits rather than in national bank shares. It seems to me that that law enforces, in certain cases, a rule of taxation inconsistent with the principle of equality which underlies the legislation of congress, and conformity to which is essential to the validity of state taxation of national bank shares.

There are other grounds upon which the learned counsel of complainant assail the state law. It is contended that the shareholders are subjected to double taxation as to the real estate of the bank, because, in addition to the taxation of shares at their cash value, the bank was required to pay and did pay taxes for the same year upon the real estate used in its business. It is quite sufficient to say that the bank is not entitled to relief upon this ground, since it satisfactorily appears that, excluding the real estate of the bank, the shares are not assessed beyond their fair cash or selling value. The objection that the state law makes a discrimination in favor of individuals and corporations, other than national banks, owning United States bonds and securities, is not, I think, well taken. If I do not misapprehend this objection, it rests upon the ground that the state does not impose taxes upon securities which the law exempts from

taxation. In determining whether the state has made an improper discrimination against moneyed capital invested in national bank shares, we must look to what it has done in reference to those kinds of moneyed capital over which it has complete control for all purposes of taxation.

I come now to inquire as to what extent relief can be given to complainant by reason of the ruling that the state law establishes a principle which, in its operation, may injuriously affect the rights secured by the act of congress to shareholders in national banks. I say *may* injuriously affect, because if the complainant's shareholders, at the time of the assessment in question, had no indebtedness to others to be deducted from the value of their assessed moneyed capital, in whatever shape that capital was, it is clear that neither they, nor the bank as their representative, could properly invoke the judgment of the court as to the constitutionality of the state law, or obtain any injunction for the protection of shareholders who were not, in fact, injured by the assessment. In such a case the question would be wholly abstract, and the court would not consume time in its consideration. The bank, I have already said, had a right to institute this suit for its protection, and, for that purpose, to ascertain what shareholders had the right to dispute the validity of the assessment, and, consequently, to demand the full amount of their dividends, without deduction for taxes assessed upon their shares. But the bill does not allege that *all* the shareholders were in a condition to complain of the assessment. It alleges only that "sundry" or "many" of them had indebtedness which the state law did not permit to be taken into account in the assessment and valuation of their moneyed capital invested in national bank shares. The evidence shows only four stockholders to have been in that condition, viz., Samuel Bayard, Frederick A. Preston, John D. Preston, and David J. Mackey. This proof was, no doubt, made for the purpose of illustrating the practical operation of the state law.

In view of the rule established by the state law, I am of opinion that every shareholder of complainant, subject to taxation in this state upon his credits, and who, at the time of the assessment, had debts which were not deducted from his credits, because he had none, and which were not deducted from the valuation of the bank shares because the state law would not permit that to be done, is entitled, through the complainant, to an injunction against the collection of the taxes assessed upon his shares for the year 1879. The decree can go no further than that. A few days since I addressed a letter

to counsel authorizing a final decree to be entered perpetually enjoining the collection of all taxes assessed upon complainant's shares of stock for the year 1879. Further reflection satisfies me that such a decree would be erroneous, and that the decree should not be broader than just indicated. Since the case has evidently not been prepared or defended upon the theory that the proof should show the condition of each shareholder as to indebtedness at the time the assessment and valuation in question were made, the parties should have a fair opportunity to make such proof. The cause must, therefore, go to a master to ascertain and report the facts.

Counsel may prepare the proper order of reference, indicating the opinion of the court as far as herein disclosed. There are many details connected with the convenience of counsel which should be considered in framing the order. I leave counsel to agree upon such details. If they cannot do so, I will receive from each side a draft of an order, and will adopt and have entered that one which meets my approval.