McIlvaine, J.
That a gross, if not scandalous inequality exists between the burden of taxation cast upon bank shares and that imposed upon other property, in the county of Seneca, is fully established by the records before us. But whether this inequality results from incapacity, or a more reprehensible trait in the character of the agents and officers of the law, upon whom are imposed the duties of listing and valuing property for taxation, is not disclosed. That the blame attaches to the officers of the law, and not to the law itself, appears to us very plainly.
The constitution provides (art. 12, § 2), “Laws shall be passed, taxing 'by a uniform rule, all moneys, credits, investments in bonds, stocks, and joint stock companies or otherwise; ;and also all real and personal property, according to its true value in money,” &c. And article 12, section 3, provides, “ The general assembly shall provide by law, for taxing'the notes and bills discounted or purchased, moneys loaned, and all other property, effects, or dues, of every description (without deduction) of all banks, now existing or hereafter created, and of all bankers, so that all property employed in banking shall always bear a burden of taxation equal to that imposed on the property of individuals.” Thus it appears, as far as the constitution is involved, that exact equality of burden is imposed upon all taxable property, whether owned by banks or bankers, or other persons; and further, that all property should be taxed according to its true value in money.
In obedience to these requirements of the constitution, the legislature has assumed to pass laws for the listing and taxing of all the property subject to taxation in the state, whether owned by banks or bankers or other persons, by a uniform j’ule and according to its true value in money. If the laws thus passed were faithfully executed, we have no doubt that the equality of burden, so positively enjoined by the constitution, would be substantially accomplished; and more than this should not be expected, as, from the frailty of human judgment, exact equality is not likely to be ever attained.
*579 True, the mode and agencies employed, under the statute, for listing, valuing and equalizing shares of bank stocks, are not the same as those employed for the like as to other property. I shall not enter into details as to these matters of difference ; but it will suffice to say, that real property is valued for taxation decennially by township appraisers, whose action is supervised by a county board.of equalization, and finally, as between counties, by a state board of equalization composed of the auditor of state and a member from each senatorial district. Personal property generally is .annually listed and valued by the owner under oath. Some articles may be exhibited to the assessor, who is required to value the same. The returns of assessors are equalized by county or city boards of equalization. Shares of bank stock are listed, valued and equalized thus: The president and cashier of every bank is required to return under oath to the auditor of the county in which the bank is located, annually, the names and residences of all stockholders, the number of shares held by each, the actual value in money of such shares, together with a description of all real estate owned by the bank. Thereupon the auditor is required to deduct from the total actual value of all the shares, the appraised value of the real estate, and to place on the duplicate the remainder of the total value of the shares, in the names of the owners thereof, in amounts proportioned to the number of shares owned by each. The valuations of bank shares so fixed by county auditors are supervised by a state board of equalization, composed of the auditor of state, treasurer of state and the attorney-general, who are authorized to hear complaints and equalize the valuation of the shares so fixed, <£by adding to the valuation of the shares of any such banks or banking associations as in their opinion are assessed below their value in money, or by reducing the valuation of the shares of any such banks or banking associations as in their opinion have been assessed above their value in money.”
Now, the point is made, as we understand the claim, that the inequality complained of in the plaintiffs petition was the result of this diversity in the- modes employed by legislation for fixing the valuations for taxation, of the different species *580 of property. That legislation which leads to such results i? obnoxious to the principles of the constitution, and, therefore, a tax levied under it is illegal and void.
"We wholly dissent from the first proposition. The inequality complained of cannot, in any just sense, be attributed to the state of legislation on the subject. "Whether it was wise to adopt different modes and agencies for determining the value of taxable property, we need not consider. Much might be said in its favor. But we can, and do affirm, with the utmost confidence, that an honest and intelligent discharge of duty by those intrusted with the execution of the respective modes provided by law, would accomplish all that was intended by the constitution. A faithful execution of the different provisions of the statutes would place upon the duplicate for taxation all the taxable property of the state, whether bank stocks or other personal property or real estate, according to its true value in money; and the equality required by the constitution has no other test. There is nothing in the constitution which requires property to be taxed according to the same per cent, of its true value in money, save only the one hundred per cent. The difficulty, therefore, in this case is not attributable to the laws, but to a failure to execute them in conformity to their true meaning and intent.
Confessedly, in this case, the property of the plaintiffs below, their bank shares, was valued for taxation at only eighty per cent, of its true value in money—plus the value of the real estate-owned by the bank. No word of complaint is made against the officers of the law for violating their sworn duty in placing this property on the duplicate at its par value, instead of its true value in money (as the constitution required), which was one hundred and twenty-five per cent, of its par value. The complaint, in substance, is, that they acted unlawfully and unjustly towards the plaintiffs in valuing their property for taxation, at more than forty per cent, of its true value in money. This greater wrong, the plaintiffs below would justify on the ground that other property in the county was not returned for taxation at more than forty per cent, of its true value in money.
*581 If, upon this ground alone, a court of equity can say that the valuation of the plaintiffs’ property must be reduced from eighty to forty per cent, of its true value in money, because other property in Seneca county lias been taxed upon only forty per cent, of its value, by what name shall we call the wrong that will be perpetrated on the other eighty-seven counties of the state, where all property, including shares of bank stock, has been assessed according to its true value in money, and upon which the rate required for state purposes has been paid ?
It must here be remarked, that in the petition of plaintiffs below, no fraud or conspiracy, or other unfaithfulness, has been charged against the officers and agents of the law, who placed the taxable property of Seneca county, other than bank stocks, upon the duplicate at a valuation of only forty per cent, of its true value. If it be possible that such a thing could have occurred through mistake or error of judgment, we are bound to say that such was the case; and such a thing is possible.
Where then, lies the equity of this case? While it cannot be said that the plaintiffs below should be compelled to pay more taxes in proportion to the value of their property, than is required of other taxpayers of the county; it must be affirmed that other taxpayers should pay as much as is required of the plaintiffs, in proportion to the values of their respective properties, and that is to say, until all have paid the required rate, upon the full and true value of their respective properties. If either be relieved from any portion of the burden according to this standard, it must be on the ground of some accident, mistake or error of judgment, in determining the values of their property, but not upon any ground of right. And if for such reasons the plaintiffs below, to a certain extent, and the other taxpayers of Seneca county, to a greater extent, escape the payment of their just and equitable share of the public burdens, surely equity, on the mere ground of inequality as between them, will not interfere to restrain the collection of an excess arising upon such inequality, to the detriment and injury of other taxpayers throughout the state, whose property is subject to the same levies, and has been assessed in accordance with *582 the very letter and spirit of the constitution and laws of the state.
Our statutes have made ample provision for the coi’rection of mistakes and errors of judgment, committed by those intrusted, in the first instance, with the fixing of values upon taxable property. Even unjust and corrupt discrimination can be relieved against, in the special tribunals provided by the statute, for the equalization of values. As a general rule, the decisions of these boards must be held to be final and conclusive. To these boards, and not to the courts, must complaints as to inequalities in valuations be preferred. True, the attention of the auditor was called to the fact, that the valuation of these bank shares was higher in proportion to their true value, than the valuations of other property in the county; but there is nothing in the record to lead us to believe that the annual city and county boards of equalization would not, if complaint had been made, have advanced the valuation of all other property in the county, to its true value’ in money. The opportunity provided by law for the correction of the inequality complained of, was omitted. We cannot correct it now. And if for such reasons, relief can be given to the plaintiff, we can see no reason why the like relief should not be given to every taxpayer of the state, whose property has been assessed on more than forty per cent. of. its value, even to the destruction of the revenues of the state.
What relief a court of equity would give in a case of fraudulent conspiracy, or combination or rule adopted by those whose duty it is to fix the taxable values of property, for the purpose of imposing upon some property, or class of property, more than its just share of the public burdens, we need not now inquire. No such combination or rule of action is shown in the case before us. Hence, the doctrine announced by the supreme court of the United States in Pelton v. Bank, 101 U. S. 143 ; and Cummings v. Bank, 103 U. S. 153, does not apply in this case. But even in such cases, equity will not afford relief to a complainant who cannot show that the burden imposed on him is greater than it would have been, if the laws had been faithfully executed, by taxing all property by a *583 uniform rule, and according to its true value in money; and also, that the tribunals provided in the system of taxation, for redress against inequalities, had been appealed to in vain.
Ve are, however, entirely content to approve and follow a later decision of the supreme court of the United States (National Bank v. Kimball, 103 U. S. 732), in which it was held that a bill to restrain the collection of a state tax upon the shares of a national bank, is bad on demurrer, when it does not appear that there is any statutory discrimination against them, or that they, under any rule established by the assessing officers, are rated higher in proportion to their actual value than other moneyed capital; that averments that the assessments were unequal and partial, are not sufficient.
Judgment reversed and action dismissed. ,