COVINGTON CITY NAT. BANK *v.* CITY OF COVINGTON and others.[1]

FIRST NAT. BANK *v.* SAME.[1]

*(Circuit Court, D. Kentucky. August, 1884.*

1. TAXATION—NATIONAL BANKS—KENTUCKY.

The city of Covington, Kentucky, assessed a tax for municipal purposes upon the surplus fund and undivided profits, the real estate and improvement used as a banking-house, real estate bought at judicial sales for the purpose of recovering an indebtedness to the bank, and the office furniture of the national banks, complainants herein. The statutes of Kentucky impose an annual tax of 50 cents on each share of stock, equal to $100, in any national bank within the state. A similar tax is imposed upon state banks and corporations of loan

1 Reported by J. C. Harper, Esq., of the Cincinnati bar.

and discount. Other corporations are assessed upon their corporate property, but stockholders are exempted from listing for taxation shares in such corporations. *Held* that, in the light of the decisions of the court of appeals construing these statutes, the corporate property of banks organized under the laws of Kentucky is not taxable beyond the tax of 50 cents per share of $100, and that the same rule applies to the taxation of national banks; and therefore that the furniture and real estate of complainants are exempted from such municipal taxation.

2. SAME—SURPLUS FUND AND UNDIVIDED PROFITS.

When a state law taxes shares of national bank stock, it taxes the same interest of the stockholder that he would transfer on a sale of his certificate; and therefore the tax of 50 cents a share imposed by the statutes of Kentucky, as above, is a tax on the whole interest of the stockholder represented by his stock, including his interest as such in the surplus and undivided profits, as well as the authorized capital and assets of the bank.

3. SAME—FURNITURE AND REAL ESTATE.

The furniture of national banks is exempt from state taxation, because congress has not permitted it; while the real estate of such banks may be subjected to a state tax, because congress does permit it.

4. SAME—ILLEGAL TAXES—INJUNCTION.

There is no doubt of the jurisdiction and remedy by injunction in the United States courts to prevent the collection of illegal taxes upon national banks. *Pelton* v. *Nat. Bank*, 101 U. S. 143; *Cummings* v. *Nat. Bank*, Id. 153.

In Equity.

*Benton & Benton,* for Covington City Nat. Bank.

*John F. & Chas. H. Fiske,* for First Nat. Bank.

*Wm. Byrne,* City Sol., *Mr. Roberts,* and *H. C. Whittaker,* for City of Covington.

MATTHEWS, Justice. The respective complainants in these two bills in equity are national banking associations organized under the laws of the United States, who seek to restrain by a perpetual injunction the collection of certain taxes sought to be assessed and collected by the city of Covington under the alleged authority of the laws of Kentucky. In the first case, the amount of taxes claimed by the defendant is $10,406.62. It is made up by an assessment for the year 1881 upon the surplus fund of the bank to the amount of $100,000; for the year 1882 on a surplus to the amount of $127,550; for 1883 on a surplus fund and undivided profits to the amount of $131,800; by an assessment, also, for the years 1880, 1881, 1882, and 1883 upon the real estate and improvement owned by complainant and used as a banking-house, valued at $23,000; and by an assessment for the years 1881, 1882, and 1883 upon a piece of real estate valued at $12,000; and upon another piece of real estate for the years 1880, 1881, and 1882, valued at $600. Both these pieces of real estate were acquired by the bank at judicial sales for the purpose of recovering and securing an indebtedness to it. In case of the first piece, the sale was finally confirmed October 6, 1881, and the property was resold by the bank, January 28, 1882. In the latter, possession was finally obtained by a writ of possession, March 25, 1882, and the property was resold June 14, 1882. The rate of taxation upon property for city purposes during said years was $1.85 upon each $100 of valuation, and the amount now in controversy includes a

penalty of 15 per cent. for non-payment. In the second case, the taxes claimed amount to $11,538.08, and are as follows: Upon surplus and undivided profits for the year 1882 to the amount of $160,-000, for 1883 to the amount of $170,000, and for 1884 to $174,000; upon real estate owned and used as a banking-house for each of the said years, valued at $25,000; and for office furniture used by said bank in the transaction of its business, $3,000; together with a penalty of 15 per cent. The capital of each of the complainant banking associations is $500,000, divided into shares of $100 each; and the fund described as surplus and undivided profits is the accumulation in addition to the capital stock, of which $100,000 in each case is the surplus required by law to be reserved undivided among the stockholders; and the whole fund, it is alleged in the bills, has been invested at all times during the years mentioned, in United States bonds, treasury notes, and other obligations of the United States not taxable.

The state legislation which it is supposed authorizes the taxation complained of, is as follows: The charter of the city of Covington, by an amendment approved July 1, 1858, empowers the council to assess and collect taxes on real and personal estate, choses in action, and moneys within the city and belonging to its inhabitants, as they may designate, and such as may be taxable by the laws of the commonwealth. Annual ordinances of the council have been passed for each of the years mentioned, specifying the rate of the tax levied, and directing it to be assessed on all property belonging to the inhabitants of the city, or located therein. The General Statutes of the state, prescribing the subjects and mode of taxation for state purposes, in section 4, enumerate lands, horses, and gold watches, and other items of personal property, to be specifically listed for taxation by the assessor. The fifth section prescribes that the assessors, after having taken the lists required by the previous section, shall require each person on oath to fix the amount he is worth from all sources. After taking out indebtedness, the property described in the foregoing list, after deducting $100, is to be listed for taxation. But it is expressly prescribed that there is not to be included in this statement and list, bank or other stock, when the bank, or other institution or corporation in which it is held, is required to pay tax on the same. Article 1 of the same act, under the caption of "Specific Taxation of Real and Personal Estate," provides for a tax on "bank stock, or stock in any moneyed corporation of loan or discount, of 50 cents on each share thereof equal to $100, or on each $100 of stock therein owned by individuals, corporations, or societies." It also appears that nearly all the banks of this state are specifically taxed upon their stock at 50 cents upon each share of $100; and that in the charters of most of them this tax is declared to be in lieu of all other taxes. And, in construing and applying a provision to this effect in the charter of the Farmers' Bank of Kentucky, the court of appeals

of the state, in *Farmers' Bank* v. *Com.*, *etc.*, 6 Bush. 127, said: "By a compliance with the section last quoted, the bank was to be discharged from the payment of all and every other tax. From the amplitude of the language no other rational construction can be given to it." It was accordingly decided in that case that the bank was not liable to be assessed for taxation for state or county purposes upon real estate taken by it or purchased by it in satisfaction of a debt, because "it represents the assets of the bank to its value, and is no more subject to taxation than the notes or bills held by the bank, or the money in its vaults." This seems to be the established and accepted law of the state. *Johnson* v. *Com.* 7 Dana, 342; *Trustees of Eminence* v. *Deposit Bank*, 12 Bush, 540; *Com.* v. *First Nat. Bank of Louisville*, 4 Bush, 101; *Louisville & N. R. R.* v. *Com.* 1 Bush, 255.

The state law in force imposing a tax on shares of stock in national banks, passed April 9, 1878, provides "that an annual tax of fifty cents is assessed and shall be collected on each share of stock equal to $100 in any bank located within the limits of the commonwealth, organized under the laws of the United States, usually denominated national banks, or on each $100 of stock therein owned by individuals, corporations, or societies;" and the cashier of each of said banks is made responsible for the due payment of the said tax into the treasury of the state. A provision precisely similar is made for the taxes imposed upon the stock of state banks and other corporations, which are required to be paid directly to the treasury without the intervention of assessor or collector. Other corporations, such as railroads, gas and water, toll-bridge, and telegraph companies, are assessed for taxation upon their corporate property. And in all such cases, when the companies are required to report and pay taxes upon their property, the individual stockholders are not required to list their shares in such companies for taxation. A comparison of the provisions of the statutes of Kentucky, in the light of the decisions of the court of appeals construing them, compels the conclusion that the corporate property of banks, organized under the laws of Kentucky, is not taxable beyond the tax of 50 cents on each share of stock of $100, and that the same rule applies to the taxation of national banks. This conclusion exempts in the present cases the furniture and real estate of the complainants, sought to be subjected to an assessment for municipal taxation in the city of Covington, as though it were similar property owned by natural persons. Were it otherwise as to the terms of the state statutes, the furniture of the bank would still be exempt, because the act of congress, without whose permission it cannot be taxed by state authority, has not permitted it; while, on the other hand, it is equally clear that the real estate of national banks might be subjected to a state tax, because the act of congress does expressly permit it.

It is claimed in argument that a distinction is to be made in re-

spect to the surplus fund; or, at least, to that part of it denominated undivided profits, which, it is argued, represents a property interest belonging to the stockholder, subject, like other property of individuals, to taxation, and not included in the shares of stock separately taxed at 50 cents upon each share of $100. In respect to this interest,—undivided profits,—it is argued that they do not pertain to the bank as an accumulation required by law, and therefore held in the discharge of any of its public functions so as to withdraw it from the taxing jurisdiction of the state, but that they constitute a fund in which the whole beneficial interest belongs to the stockholders, and remains undivided purely for their pecuniary benefit; and, as the existence and amount of that fund may be taken into account in estimating the value of the shares of stock for the purposes of taxation, and thus the undivided profits may be indirectly taxed, as represented by the shares, they may become the direct subject of a tax, separable and separated from the shares of stock. It is insisted that these views are supported and justified by the decision of the supreme court of New Hampshire in the case of *First Nat. Bank v. Peterborough*, 56 N. H. 38, and by that of the supreme court of New Jersey in the case of *North Ward Nat. Bank v. Newark*, 39 N. J. Law, (10 Vroom,) 380. In the first of these cases there was no controversy as to the state legislation. By one statute all shares of capital stock of banks located in that state, whether private, state, or national, were subject to be taxed, at their par value, to the owners thereof, in the town in which they reside, if in the state; otherwise, in the town where the bank was located. By another law, the surplus capital on hand, of banking institutions, was made liable to taxation in the towns where such banking institutions were located. The surplus which was involved in the controversy was net undivided profits in excess of the amount required by congress to be reserved. The tax in question in that case was upheld as not being in conflict with the act of congress; the grounds of the opinion appearing to be that the undivided profits, if regarded as the property of the bank, were not essential to the operations of the bank as an agency of the government of the United States, and that, as they might indirectly be the subject of a tax by taxing shares, not upon the par or nominal value, but upon the actual or market value, it was mere matter of form, and not of substance, to tax them directly, in addition to the tax upon the par value of the shares. In the second case, that from New Jersey, the banking association, which was located in Newark, had been assessed for municipal taxation upon its whole capital stock and surplus. It appeared that the capital stock was owned by non-residents of the state, and by residents of places in the state other than Newark, as well as by those residing within the limits of that municipality. It did not appear that the surplus had been invested in securities of the United States. The doctrine was asserted by the court, as the result of decisions by the supreme court of the United States, that

"the property merely of a corporation created by act of congress may be taxed by the states, provided such taxation be not indirectly a tax upon the credit and securities of the federal government. That this principle will apply to the undivided surplus of a national bank, and to other investments of its capital, if the same be not invested in securities of the federal government, is apparent from the cases above cited. The states possess an inherent power of taxation of such property, independently of any act of congress."

By a general law of the state, stock in national banks was taxed to their stockholders resident in the state, in the townships or wards where they respectively resided, and the bank was assessed for stock owned by non-residents of the state. A special act was passed which introduced a different rule as to banks in the city of Newark, taxing all their stock in that city, and it was held that this special act was repugnant to the constitution of the state, which required in such cases a general and uniform law. It was accordingly held to be void in respect to stockholders residing in that state, but not in Newark. Those residing in that city were held to be properly taxed there, and, as to non-residents, it was decided that the tax, though nominally against the bank, was really against them, and was properly assessed, and was to be collected through the bank. "The undivided surplus," the court adds, "not being invested in federal securities, might have been lawfully taxed against the bank, but the state law seems to contemplate that it is to be taxed in connection with the capital stock in the hands of the stockholders. It should therefore be taken into consideration in estimating the taxable value of the stock." It will be observed that under the New Jersey law the stock was taxable, not at a fixed sum per share, but on a valuation to which the general rate of taxation was to be applied. While it may be considered as settled, as was said by the supreme court of the United States, (*Railroad Co.* v. *Peniston,* 18 Wall. 5–33,) "that no constitutional implications prohibit a state tax on the property of an agent for the government merely because it is the property of such agent;" and, as was said in *Nat. Bank* v. *Com.* (9 Wall. 353, etc.,) "that the agencies are only exempt from state legislation so far as that legislation may interfere with or impair their efficiency in performing the functions by which they are designed to serve that government,"—nevertheless it is equally true, notwithstanding any expression to the contrary in the two cases cited from New Hampshire and New Jersey, that congress, when it creates or adopts a corporation as an agency of the government for the purpose of exercising any public function, has the exclusive right to judge with what powers and privileges it shall be endowed, and how far, if at all, it shall be subject to state power or amenable to state jurisdiction, and that in case of national banks it has, in fact, withdrawn them and their property from the domain of state taxation, except so far as it has been expressly consented that they may be taxed. That consent, so far as it has been

given, is contained in section 5219 of the Revised Statutes. It does not permit taxation of any property belonging to the bank except only its real estate, as clearly appears from *Rosenblatt* v. *Johnston*, 104 U. S. 462. It does permit the shares in any such association to be included in the valuation of the personal property of the owner or holder of such share in assessing taxes imposed by authority of the state within which the association is located, in such manner and in such places as the state may determine and direct, subject only to two restrictions: that the taxation shall not be at a greater rate than is assessed upon the moneyed capital in the hands of individual citizens of the state, and that the shares of any national banking association owned by non-residents of any state shall be taxed in the city or town where the bank is located, and not elsewhere. These are the rules prescribed by congress, to which the states must conform in taxing the property of national banks, or taxing individuals on account of their interest in them. Any state taxation not within these limits is void. But, as has already been shown, the legislation of Kentucky does not undertake to subject to taxation any of the property of a national bank, not even its real estate, in respect to which congress has left it free; and, consequently, the surplus fund and undivided profits considered as the property of the bank are not subject to assessment for taxation against the bank.

It remains, then, to consider how and how far the interest of the stockholders in the surplus and undivided profits may be taxed, and whether it has been taxed to any extent by the law of Kentucky. In the New Hampshire case, *supra*, it will be observed that a tax was imposed on shares of stock at their par value, and additional tax at the same rate upon the undivided profits, and this was sustained as being in substance a tax on the shares at a value enhanced by that of the undivided profits; while in the New Jersey case the tax on the undivided profits was allowed on the same principle in estimating the taxable value of the stock, as the state law seemed to contemplate that it should be taxed in connection with the capital stock in the hands of the stockholders. The act of congress permits the taxation of the shares of the stock, but does not specify at what rate nor on what valuation. The only limitation in this respect is that the taxation upon them shall not be at a greater rate than is assessed on other moneyed capital in the hands of individual citizens of the state. Subject to this limitation, it was held in *Hepburn* v. *School Directors*, 23 Wall. 480, that such shares might be taxed at their current market value at the place where the bank is located, even though that should be above their par value, because, as the court said, "it is not the amount of money which is invested which is wanted for taxation, but the amount of moneyed capital which the investment represents for the time being;" and this amount being the amount of moneyed capital employed by the bank, may have been increased by accumulated profits, which would give additional value to the shares

of the stockholders. So, in *People* v. *Com'rs of Taxes*, 94 U. S. 415, the rule of valuing the shares at their full and true value, as they (the assessors) would appraise the same in payment of a just debt due from a solvent debtor, prescribed by a New York statute, was sustained. The court said:

"The appraisement included the reserve fund, which is as much a part of the property of the bank and goes to fix the value of the shares equally as if it were not called by that name, but remained a part of the specie, bills discounted, or other funds of the bank undistinguished from the general mass."

When, therefore, a state statute taxes the shares of a stockholder at their actual or market or full value, that necessarily includes such value beyond its par or nominal value as is imparted to the stock by the fact that the bank has a surplus fund or undivided profits. The interest which congress has left subject to taxation by the states under the limitations prescribed, and which is a distinct, independent interest in property held by the shareholder, like any other property that may belong to him, is that interest, as defined in *Van Allen* v. *The Assessors*, 3 Wall. 573, which "entitles him to participate in the net profits earned by the bank in the employment of its capital, during the existence of its charter, in proportion to the number of its shares, and upon its dissolution or termination to his proportion of the property that may remain of the corporation after the payment of its debts;" and (page 587) it includes for taxation the whole interest of the shareholder, such as would pass to a purchaser of his shares on a transfer of his certificate. So, when a state law taxes shares of national bank stock, it taxes the same interest of the stockholder that he would transfer on a sale. The state may tax them at their actual value or at their market value, or at any other value ascertained by some fixed rate of appraisement which does not violate the act of congress. In the present cases, the law of Kentucky imposes a tax of 50 cents on each share of $100 of the capital stock of national as it does of state banks. Shares of $100, intended in that legislation, is meant to describe the nominal division of the capital stock as specified in the acts and charter of organization. Speaking of this statute, the supreme court (9 Wall. 353) says:

"What the legislature intended to say was that we impose a tax on the shares held by individuals or other corporations in banks in this state. The tax shall be at the rate of fifty cents per share of $100. If the shares are only equal to $50, it will be twenty-five cents on each share. If they are equal to $500, it will be $2.50 on each share. The rate is regulated so as to be equal to fifty cents on each share."

It follows, therefore, that the tax of 50 cents a share is a tax on the whole interest of the stockholder, represented by his stock, including his interest, as such, in the surplus and undivided profits, as well as the authorized capital and assets of the bank.

Upon the question of jurisdiction and remedy by injunction, referred to in the argument, it is unnecessary to do more than refer to *Pelton*

v. *National Bank,* 101 U. S. 143, and *Cummings* v. *National Bank,* Id. 153.

In conformity with these views, decrees will be entered in these cases in favor of the complainants, respectively, granting the injunction prayed for.

See *Exchange Nat. Bank* v. *Miller,* 19 FED. REP. 373, and note, 381.—[Ed.