## RICHMOND & D. R. Co. v. BLAKE et al.

(*Circuit Court, D. South Carolina.* March 26, 1892.)

1. ILLEGAL TAXATION—INJUNCTION—TENDER—PAYMENT NUNC PRO TUNC.
   A bill by a railroad company against several county treasurers, to enjoin the collection of an unlawful assessment, admitted that a certain amount was due, averred that it had tendered the same at the proper time, and that the treasurers refused to receive it, and offered to pay the money into court. Thereupon the several treasurers entered their appearance, and moved for an order requiring the company to pay *nunc pro tunc* the sums before tendered. *Held* that, as the order would be binding upon the parties and privies against all the world, the company could not object on the ground that the payment might jeopardize some of its rights, or that some advantage might be taken of it elsewhere.

2. SAME.
   The company could not object that the action of the treasurers might not be binding on the state, which was not a party, since the company itself had sought to have the assessment declared invalid without making the state a party to the bill, and since the court would have no right to hold the money until the state submitted to its jurisdiction, as this would be taking advantage of her necessities to coerce her.

In Equity. Bill by the Richmond & Danville Railroad Company against Blake and others, county treasurers, to enjoin the collection of taxes. Heard on a motion requiring complainant to pay certain moneys admitted to be due. Granted.

*Mitchell & Smith, Smythe & Lee, Fitz Simons & Moffett, J. T. Barron, Brawley & Barnwell,* and *Cothran, Wells, Ansel & Cothran,* for complainants.

*J. L. McLaurin,* Atty. Gen. of South Carolina, *Lord & Burke,* and *Ira B. Jones,* for defendants.

SIMONTON, District Judge. The bill is filed against certain persons filling the office of county treasurer in the several counties named therein, and certain other persons, sheriffs of the said counties, respectively. The prayer is for a perpetual injunction against them from proceeding, by levy or otherwise, from collecting a tax based upon an unlawful assessment. The bill admits that there is a certain sum lawfully due, avers that this sum has been lawfully tendered to each one of the defendants, who are treasurers, at the proper place, within the proper time, and in lawful money, and that such tender has been declined. It craves leave to pay the money into court. Upon the filing of the bill, a rule to show cause was issued against the defendants, requiring them to show cause on the first day of the ensuing term, (4th April next.) In the mean time, the restraining order was entered. Attorneys representing the defendants came into court, and entered a motion that the complainant be ordered again to tender the money previously tendered. No appearance of any kind had been entered, and no defense or plea filed in their behalf. As a matter of practice, it is well to say that, under these circumstances, the motion could not have been entertained. The defendants were not in court, had not submitted themselves to its jurisdiction, and could not be heard by counsel. An unqualified appearance has now been entered. The motion has been modified, so as to be, in effect, that the complainant *nunc pro tunc* pay to the several treasurers the sum of money tendered to each on the 19th or 20th February last; such payment to have the same force and effect as if made and received on the day of said tender. The case has been heard upon the bill and its exhibits, and on affidavits offered by the defendants.

It is a matter of extreme delicacy to interfere with the means by which moneys are raised for the revenue of the state. In the language of the supreme court in *Dows* v. *City of Chicago,* 11 Wall. 108:

"It is upon taxation that the several states chiefly rely to obtain the means of carrying on their respective governments. It is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible."

While, therefore, in many cases, the courts must interfere when there is danger of injustice or a violation of the law, (*Pelton* v. *Bank,* 101 U. S. 148; *Cummings* v. *Bank,* Id. 153,) every precaution is taken to limit the interference within the narrowest necessary limits, and to prevent any delay which can be avoided, (*Dows* v. *City of Chicago, supra.*) The court takes care that only so much of the tax is enjoined as is claimed to be illegal. It requires as a condition precedent that the amount of tax admitted be paid or tendered. "It is the established rule of this court that no one can be permitted to go into a court of equity to enjoin the collection of a tax until he has shown himself entitled to the aid of the court by paying so much of the tax assessed against him as it can plainly be seen he ought to pay. Before he asks exact and scrupulous justice,

he must first do equity, by paying so much as it is clear he ought to pay, and delay only the remainder." *Bank* v. *Kimball*, 103 U. S. 732; *State Railroad Tax Cases*, 92 U. S. 575. The complainant fulfilled this condition, and tendered the sums admitted. The tender having been refused, and only because it was refused, the leave is asked to pay them into court. The learned counsel who led for the complainant objects to the motion of the defendant, from fear that some right of the complainant may be put in jeopardy, or that an advantage may be taken elsewhere of this act. It will be observed that the order to pay the money into court was the alternative of its receipt by the county treasurers. It is made necessary simply because of their refusal to receive it on the day it was offered. As a tender, it is a continuous act. If the prayer of the defendants be allowed, and they be permitted to do now what they should have done on the day of the tender, the receipt of the money must relate back to that day, and it must operate precisely in the same way, and to the same extent, as it would have operated then. Even were this not the case, the court has before it all the parties on both sides of the cause. Its order and decree, unless reversed by a superior court, will bind them and their privies as against the world. It is urged that, as the money will eventually become—may now be—the money of the state of South Carolina, no action on the part of or against these defendants can preclude the state. This may be true. But a final decree upon the legality of this assessment is sought in this case, these defendants being the only parties. If such final decree can be made so to operate as to make such assessment wholly void, surely an order or decree made upon this interlocutory motion, all the parties being within the jurisdiction of and submitting themselves to the court, would have an equally controlling effect. The court cannot hold this fund, admitted to be payable to the defendants, until the state shall come in and submit to its jurisdiction. This would be the use of the extreme necessity of the state to coerce her. If there be any danger or fear in this cause, it arises from the peculiar character of our federal system, and cannot be avoided. The money now in question will become a part of the revenues of the state. It is now due to the state by the several defendant treasurers, charged to them. To discharge themselves, they must pay it over when received to the state, and *pro tanto* discharge the complainant. Both parties have expressed their desire that the admitted sums go into the treasury of the state. Complainant shows this by its tender, the defendants by their motion. As we have seen, no delay which can be avoided is permissible. Precaution must be taken that no rights are compromised. Depositing the money in the registry, and drawing it out immediately, would be circuitous and idle. But the defendants have refused a legal tender, made to them at much expense and with great trouble. They cannot expect the same formalities again. Indeed, their motion necessarily dispenses with these. They have come here to retrace their steps, and must obtain their request here.

It is ordered, adjudged, and decreed that the complainant deposit with the clerk of this court, within 10 days from the date of this order, a cer-

tified check, drawn upon a solvent bank, payable to each county treasurer defendant herein, the check to such treasurer being for the same sum of money heretofore tendered to him by complainant as the sum admitted to be due; that the said clerk deliver to each of said defendants, or to his attorney in this cause, the check so drawn; that upon delivery of such check, the bank upon which it is drawn remaining solvent, it shall be received and accepted as of the day of the original tender, with the same force, effect, and operation, to every intent, purpose, and inference whatsoever as if the money was actually received on that day.

All questions as to the costs of this receipt and delivery are reserved.