## COUNTY OF GALVESTON v. GALVESTON GAS COMPANY.

### No. 2545.

1. **Recovery of Taxes Collected upon Illegal Assessment.**—The decision in a former appeal, 54 Texas, 287, approved and followed.

2. **Board of Equalization.**—The county board of equalization has the power of

hearing appeals or complaints against the valuation made of property in the assessment. It has no power to strike from the assessment roll property placed thereon by the assessor.

3. **Notice—Illegal Assessment.**—An assessor, after a full rendition of the property owned by a tax payer has been made, has no power to increase the valuation of the property by a relevy under the guise of a fictitious "balance of capital." Such attempted revaluation being illegal it is of no consequence whether the tax payer had notice of it or not.

4. **Same.**—The tax payer is under no obligation to apply to the county commissioners for relief from an attempt to impose taxes upon it based upon property it did not own. That tribunal can only fix valuations upon property on the tax rolls.

5. **Value—Evidence.**—On a question of valuation the assessment made by the city authorities where the property is situated is incompetent unless shown to have been made or agreed to by the owner against whom offered.

6. **Liability for Money Collected by Officer.**—When a county or other municipal corporation, acting through the tribunal or board lawfully charged with the conduct of its fiscal affairs, places in the hands of the person by law authorized to collect and receive taxes for it such process as on its face empowers him to make collections for its use, such collection when made must be deemed to have been received by the corporation.

7. **Same.**—A county is responsible for taxes collected for it by the collector of taxes for it.

8. **Interest on Taxes Illegally Collected.**—Where taxes were illegally demanded and paid under protest interest should be allowed the tax payer suing for the recovery from the time of the payment.

APPEAL from Galveston. Tried below before Hon. S. W. Jones, special district judge.

The opinion states the case.

*W. M. Jerdone,* for appellant. — 1. Where a party pays an illegal demand with full knowledge of all the facts which render such demand illegal without an immediate and urgent necessity therefor, or unless to relieve his person or property from detention or to prevent an immediate seizure of his person or property, or in case the property be real estate where the threatened proceedings (e. g. advertisement and sale) would result in casting a cloud on the title, such payment must be deemed voluntary and can not be recovered; and the fact that the party at the time of making the payment files a written protest does not make the payment involuntary. The mere protest furnishes no evidence that it was made under compulsion. Gen. Laws 1874, ch. 157, pp. 213–14; Cool. on Tax., 542, 558, and cases cited; Dill. on Mun. Corp., sec. 751, note 3; Detroit v. Martin, 34 Mich., 180; Union Ins. Co. v. City of Alleghany, — Pa. St., —; Fleetwood v. City of New York, 2 Sanf., 475; Bucknall v. Story, 47 Cal., 597; Awalt v. Building Assn., 34 Md., 435; Mayor v. Jefferman, 4 Gill., 425; Baker v. Corillo, 5 Cal., 473; Stewart v. Palmer, 74 N. Y., 183; Mayor v. Townsend, Rep., vol. 8, p. 626; Wells v. Buffalo, Rep., vol. 9, p. 423; Shune v. St. Paul, Rep., vol. 10, p. 368.

2. No authority can be found which holds that money paid to prevent

the sale of land under a threat to sell the same on an assessment or judg-ment which is not a lien thereon can be recovered back by reason thereof. Gen. Laws 1876, ch. 152, secs. 16–20; Gen. Laws 1879, ch. 50, p. 46; Cool. on Tax., 542–43; Detroit v. Martin, 34 Mich., 170; Union Ins. Co. v. City of Alleghany, — Pa. St., —; Fleetwood v. City, 2 Sanf., 475; 5 Kan., 412.

3.   When a person is in default and has failed to return and render his property to the proper officer within the time prescribed by law, either by concealing certain items of property or by overreaching and de-ceiving the assessor as to its fair value and getting it received and placed on the roll at less than one-half or one-third its true value, on the dis-covery of this default and deceit by which a large part of his property values were thus unrendered and had escaped assessment the assessing officer was by the law in force and under the instructions of the Comp-troller authorized to assess this unrendered property or taxable values which were unrendered, and by law need give no notice to the person thus in default. Having failed in his duty he must be on the lookout, and there being at that time no provision of law that entitled him to notice that the assessor would assess the unrendered property or values, for this default he was subjected to the doom of the assessor. Gen. Laws 1873, ch. 83, sec. 9; Gen. Laws 1874, ch. 125, sec. 5; Ry. Co. v. Scanlan, 44 Texas, 651.

4.   The court erred in holding that the neglect and failure of the plaintiff to take advantage of the means and measures provided by law for the correction of errors in assessments, if any had been in fact made, to-wit, by the selection of arbiters, did not inhibit and estop it from maintaining this suit and in this collateral way assailing the judgment of the Commissioners Court rendered on September 22, 1876, and thus turn-ing the District Court into a tribunal for the correction of errors in tax assessments. Harrison v. Vines, 46 Texas, 15; Ry. Co. v. Scanlan, 44 Texas, 651.

5.   The court erred in holding the action of the Commissioners Court and its judgment rendered September 22, 1876, as of no force and effect and subject to be impeached collaterally as in this suit.

6.   Appellee from whom certain State and county takes were claimed on assessments made against it for the year 1876, having obtained from the assessor who made said assessments his recommendation in writing that appellee's aggregate assessment for the year 1876 be reduced and made to conform in value to the same figures as appellee's assessment for the year 1877, and having with said recommendation endorsed on its pe-tition voluntarily invoked the jurisdiction, arbitrament, and judgment of the County Commissioners Court of Galveston County in July, 1877, when said court was convened and sitting for the correction of errors and mistakes in tax matters, and petitioning said court for relief, sub-

mitted itself to the action and judgment of said court, and obtaining from it a reduction of said assessment to the extent of $169,000 of which it took advantage, will not be permitted to repudiate and refuse to execute that portion of the judgment that holds it liable and bound for a portion of said assessment or to urge said tribunal had no jurisdiction. There was an implied undertaking on the part of appellee when it obtained the recommendation of the assessor and when it invoked and obtained the action and judgment of said court that it would abide said judgment. The action of the court was induced by an implied undertaking to abide by that undertaking, and appellee inducing such action can neither in whole or in part repudiate the effect of such conduct. Ry. Co. v. Scanlan, 44 Texas, 651, 652; Big. on Estop., pp. 571, 573, 574, 578; Ferguson v. Landrum, 5 Bush., 230; Daniels v. Turney, 102 U. S., 415; Gebhard v. Reeves, 75 Ill., 301; People v. Waite, 70 Ill., 25; Cool. on Tax.

7. Whether McCormick had authority to make said supplemental assessment or not, and whether appellee had notice, certainly they had notice of the action of the Commissioners Court in July, 1877, and its action at that time made the assessment valid and binding. Harrison v. Vines, 46 Texas, 22.

8. The first part of the rendered rolls of the city of Galveston showing a rendition in March, 1876, by appellee of its property very largely in excess of the rendition made by appellee to the justices in March, 1876, together with a printed and published ordinance of said city providing that the first part of the rendered roll of said city should contain only those renditions and assessments where the owner of the property and the city assessor agreed on its value, when offered in evidence on the trial of the cause were admissible as admissions of the appellee that it had failed to render its true and real values to the justices, and tending to support the allegations of willful and intentional fraud in making said renditions for 1876 as set forth in appellant's second amended answer.

9. Where one actually has and owns property values taxable by law which he has failed to render, either by withholding or concealing the same or by a gross undervaluation of that returned, and the assessor in his effort to get at and assess the same fails to accurately describe said property values or makes mistakes in the language or words used in placing on the tax rolls the property he assesses, no such mistake or error can relieve the said owner of his liability for the tax. Harrison v. Vines, 46 Texas, 22, 23; Rio Grande Ry. Co. v. Scanlon, 44 Texas, 651.

10. There was no evidence before the court that Galveston County had ever received the money they allege they paid under protest to F. R. Dean. The tax claimed was State as well as county tax, and in paying it to said Dean, if paid as alleged, all was paid together to him. No evidence was introduced that showed a dollar of it ever went into the treasury of ap-

pellant or was used or appropriated by it.  No notice was given to said Dean that suit would be brought to recover it.  Without this proof they should not be permitted to recover against appellant.  Galveston City Co. v. City of Galveston, 56 Texas, 486.

*Mott & Ballinger*, for appellee. —1.  The court did not err in refusing to overrule defendant's demurrer to plaintiff's petition.  The question had been determined by this court, and for the judge below to have sustained the demurrer would have been to overrule the Supreme Court of Texas. The payment of an illegal tax under protest after property has been advertised for sale by the collector to satisfy the same is compulsory, and the parties may recover back.  An illegal tax which has been paid under compulsion and protest can be recovered back from a county after the same has been paid into the county treasury.  Galveston Gas Co. v. Co. of Galveston, 54 Texas, 287; Galveston Co. v. Gorham, 49 Texas, 279; City of Marshall v. Snediker, 25 Texas, 471; Baker v. Panola Co., 30 Texas, 86; Galveston City Co. v. City of Galveston, 56 Texas, 486; Burr. on Tax., 266, 443, 442, 343; Cool. on Tax., 568, 565–569, 542; Erskine v. Van Arsdale, 15 Wall., 77; Stovall v. Fowler, 72 Ala., 77; Elliott v. Swartwout, 10 Pet., 150; Boston, etc., Co. v. Boston, 4 Met., 189; Preston v. Boston, 12 Pick., 14.

2.  There was no deceit or attempted deceit on the part of the gas company.  It rendered all the property owned by it, and the attempted reassessment made by the assessor and placed by him upon the supplemental roll was for property it did not own, and was an attempt to make the corporation pay for shares of stock owned by individual stockholders. There was no law requiring or authorizing the assessment of shares of stock not owned by it against the company, and such assessment was illegal and void *ab initio*.  Act April 30, 1864, 2 Pasch., art. 7718; Act May 2, 1874, Gen. Laws, 1 sess. 14 Leg., 213; Act June 3, 1873, Gen. Laws, 204; Act Aug. 21, 1876, pp. 269, 275; Bank v. Rogers, 51 Texas, 606; Harrison v. Vines, 46 Texas, 15.

3.  The laws in force on January 1, 1876, regulating assessments requires every person, firm, corporation, or association owning any property in the State on the first day of January of each and every year to return the same for taxation, but did not authorize or permit the assessment against corporations of shares of stock not owned by them; and the supplemental assessment made by McCormick after his induction into office whereby he undertook to charge companies for stock not owned by them was illegal and void.  National Bank v. Rogers, 51 Texas, 606.

4.  There was no special tribunal created by statute for the purpose of determining whether or not corporations or individuals should be assessed for property not owned by them, and had such a tribunal been created it would be unconstitutional.  The only tribunals created were to determine

disputes as to values of property and as to whether all property had been rendered.    Gas Co. v. County of Galveston, 54 Texas, 287.

5.    The question was not one of revaluation but as to whether plaintiff owned the property.    To attempt to tax it for property it did not own would have been confiscation.

6.    Neither the action of the Commissioners Court nor that of the assessor could deprive parties of their constitutional rights or compel them to do things in violation of law.    And the approval of a roll by a Commissioners Court can not give force or vitality to an illegal assessment.

7.    When McCormick undertook to make his additional assessment the new Constitution had just gone into effect.    No law had been passed to give interpretation or effect to the clause concerning the board of equalization, and parties were in doubt as to what their remedies were or how to obtain them.    And it was no estoppel on the part of the plaintiff that it solicited the assistance of the collector or of any other official in its efforts to get rid of an unjust burden or to do the best it could under the exaction and pressure of an illegal demand.    Const., sec. 18, arts. 5 and 10; Gas Co. v. County of Galveston, 54 Texas, 287; Acts of 1879, ch. 47, p. 44; Blum v. Merchant, 58 Texas, 403; Echols v. McKie, 60 Texas, 41; Cool. on Tax., 819–20.

Stayton, Chief Justice. — This cause was before this court at a former term on appeal from a judgment sustaining a demurrer to the petition.    54 Texas, 287.    It was then reversed and remanded, and upon a trial upon the merits the judgment now before this court was rendered in favor of appellee, who was plaintiff.

The cause was tried on the original petition.    The facts in substance are, that the appellee, a corporation owning property in this city consisting mainly of real estate improved and used for the manufacture and distribution of gas, and the usual appurtenances to such a business, on March 1, 1876, under oath rendered for assessment to the justices of the peace, whose duty it then was to assess all property for State and county taxes, all the property owned by the corporation, which was by the assessor accepted at a valuation of $141,125.

The assessment was for the year 1876, and as made was approved by the County Commissioners Court on June 2, 1876, and on July 8 following the tax roll containing this assessment was duly certified for collection.    The total State and county tax on this assessment was $1740.55, which on February 27, 1877, was by the gas company paid to the proper collector of taxes.

At the time of the adoption of the present Constitution John A. McCormick was elected assessor of taxes for Galveston County and qualified and entered on the discharge of his duties.

On April 29, 1876, he was informed by the Comptroller by circular ,sent to all assessors and collectors of taxes that all rolls completed prior to April 18, 1876, and approved by the County Court would be revised at the Comptroller's Office, and that duplicates of such rolls would be de- .livered to collectors.

The same circular instructed assessors to make supplemental assess- -ment rolls of property that might be discovered which had not been en- -tered on the regular rolls made from the assessments made by justices of the peace.

On May 4, 1876, the Comptroller informed the assessor that all prop- -erty assessed by justices of the peace prior to April 18, 1876, either with or without the consent of the owner, should be placed on the roll made -out for the justices and not upon a supplemental roll to be made from .an assessment to be made by the assessor, and he was again directed to make assessment only of property not rendered.

On September 16, 1876, the Comptroller by circular instructed assess- -ors to complete the assessment of property not assessed by the justices, and to strike from their supplemental rolls all property appearing on the rolls made from the justices' assessment.

Some time after May 4, 1876, the assessor, McCormick, applied to the secretary of the gas company for a list and appraisement of the compa- ny's property for that year.

The secretary informed him that the company's property had already been assessed for that year and refused to furnish a further list, where- -upon some time in the month of June the assessor made a further assess- ment against the company on what he termed "balance of capital other -than real estate and other property rendered," which he valued at $418,- 875. This assessment he placed on his supplemental roll, which on Sep- tember 22, 1876, was accepted and approved by the County Commissioners ·Court and afterwards certified for collection.

Of these proceedings the gas company was not notified until after the supplemental roll had been approved and certified for collection by the Commissioners Court. The company, as before said, owned no other property than that placed on the roll made from the justices' assessments nor did it have on hand any money or own any of its stock on January 1, 1876, which was then as now the date which fixed the liability for taxes.

On July 5, 1877, the gas company petitioned the Commissioners Court to relieve it from the assessment made by McCormick as before stated, which was refused, but on recommendation of McCormick the supple- mental assessment was reduced to $265,578. The county tax on this sum amounted to $1947.57, and to collect this the collector of taxes levied upon and advertised for sale some of the real estate owned by the gas company, whereupon to avoid the threatened sale the company under pro-

test paid the tax claimed for the county as well as that paid for the State, and $2.03, the cost of levy and advertisement.

It is not pretended that the assessor knew of or that the gas company owned any other property than that listed, appraised, and returned for taxation in March, 1876, and his assessment was made by multiplying the number of outstanding shares in the company's capital stock by the sum which a broker's printed circular, published January 1, 1876, quoted the stock at, from which however he deducted the sum which stood against the gas company as a tax on the roll made under the assessment made by the justices.

This action was brought by the company to recover from the county the sum paid on taxes claimed by it under the assessment made by McCormick, with interest thereon. The court below rendered a judgment in favor of the gas company for the sum paid to the county under protest, but refused to allow interest.

The county appeals from the judgment, and the gas company has filed cross-assignment of error, complaining of the action of the court in refusing to allow interest. The appellant urges that the court erred in overruling a demurrer to the petition, but we do not find from the record that the court was called upon to pass upon a demurrer after the former decision made by this court.

Many propositions are made in appellant's brief based on an assignment of error above referred to involving questions decided on the former appeal. If the court below, after the judgment was reversed and the cause remanded, had again passed on a demurrer to the original petition, the former decision of this court would be conclusive of the following questions:

1. That the threatened sale would have cast a cloud on the gas company's title to the property levied upon.

2. That the payment made under protest was so far compulsory as to entitle the gas company to recover it if illegally demanded and received.

3. That the application to the Commissioners Court for relief from the tax claimed under the assessment made by McCormick could not bar the right of appellee to recover the sum illegally claimed and paid under protest.

These questions are again presented under the first assignment of error, but there is nothing in the record to break the full force of the decision made on the former appeal and it must be held conclusive on the same questions again presented.

The second assignment of error urges that the court erred ·in finding that appellee did not have notice that the assessment made by McCormick would be and was made. If the evidence would have justified or required a different finding it is unimportant unless the assessment made by McCormick was valid and binding, except as to valuation, which ought to have been corrected through the board of equalization if ap-

pellee had notice in fact or was charged by law with notice of the assessment.

As held on the former appeal the board of equalization had no jurisdiction to grant relief to appellee. If its property had been legally assessed by McCormick but at a value too high, that board would have had power to reduce the valuation or to declare it not too high, and its decision would have been final. McCormick was authorized to make a supplemental assessment only when the tax payer had failed to render for assessment all property subject to taxation, and so by such supplemental assessment to reach the property not already assessed.

The evidence and findings show that the gas company had rendered for assessment all property owned by it on January 1, 1876, and that this had been received by the justices prior to the time McCormick entered upon the discharge of his duties as assessor. He attempted to revalue the property already assessed under claim that the company owned property which he classed as "balance of capital" unassessed that was in fact but the difference between the value of the property actually owned and assessed by the company at a valuation accepted by the company satisfactory to his predecessors and approved by the Commissioners Court and the value he placed on the same property.

The vice in his assessment termed "supplemental" was that there was no property owned by appellee on which such an assessment could again for the same year be made, and notice or want of notice of an attempt to assess something nonexistent or not owned by the company against which the assessment was attempted was of no importance whatever.

The third assignment is that "the court erred in holding that the neglect and failure of the plaintiff to take advantage of the means and measures provided by law for the correction of errors in assessments, if any had been made, to-wit, by the selection of arbiters, did not inhibit and estop it from maintaining this suit and in this collateral way assailing the judgment of the Commissioners Court rendered on September 22, 1876, and thus turning the District Court into a tribunal for the correction of errors in tax assessments."

If the gas company had been dissatisfied with the valuation placed on its property by the justices it would have been its duty under the statutes to submit the question of valuation to arbiters, for the assessment made by them was on property owned by the company and subject to taxation. Pasch. Dig., arts. 7560, 7562; Gen. Laws 1874, p. 213.

There was no controversy, however, as to that valuation, and appellee was under no obligation to seek relief through the Commissioners Court from an attempt to impose taxes upon it based on property it did not own. That court had power to fix valuations, but this could be done only when there was property to be valued, and no action by it, whether in

approving assessments or refusing to relieve from assessments assumed to have been made against any one on property not owned by such person and in fact having no existence, could be binding on the person thus sought to be charged.

Appellant proposed to offer in evidence the tax rolls of the city of Galveston, with the valuation of appellee's property thereon, for the purpose of showing that it was of greater value than was placed on it by the assessments made by the justices.

This evidence was excluded, and in allowing the bill of exception the court said: "The assessment roll of the city of Galveston showed no property belonging to the plaintiff subject to taxation under the State law other or different from that rendered by plaintiff to justices of the peace for taxation for the same year. By the charter and ordinances of the city of Galveston then in force all persons and corporations rendering property to the assessor for taxation were required to render such property as they owned on March 1 of the current year. No other evidence than said assessment roll had been offered to show that the plaintiff had actually rendered its property to the assessor for taxation for 1876, or that the values placed upon the property appearing upon the city's roll had either been fixed or agreed to by plaintiff, and by the ordinances of the city that was made the duty of the assessor and not of the tax payer, and the evidence thus offered was objected to on the ground that it was irrelevant and inadmissible for the purposes for which it was offered."

If the question whether the valuation made in the rendition to the justices of the peace was fair had been an important inquiry in this case this evidence would have been properly excluded. A statement as to value found on the rolls of the city not made or shown to have been agreed to by appellee could not be received against it any more than can the declarations of third persons as to matters generally be received.

It is claimed that the court erred in rendering judgment against appellant in the absence of proof that the money was actually paid into the county treasury or in some way used or appropriated by the county.

This action is for money had and received, and there can be no doubt that in order to maintain it it must appear that the tax was illegal and void and not merely irregular, that it was not voluntarily paid, and that it went into the hands of such person as was the representative of the county to receive it for its use.

Many cases have arisen in which the tax collector for a town was under the law the collector of county or State tax, and in such cases it has been constantly held that an illegal collection of taxes by him for a county or the State would not fix liability on the town. This is simply because in such cases as to money so collected the collector is not the agent of the town.

We are of opinion, however, when a county or other municipal corpo-

ration, acting through the tribunal or board lawfully charged with the conduct of its fiscal affairs, places in the hands of the person by law authorized to collect and receive taxes for it such process as on its face empowers him to make collections for its use, that a collection so made by such person must be deemed to have been received by the corporation whose agent to make the collection he was.

The collector who received the sum now sought to be recovered was empowered by the law to collect taxes for the county; the Commissioners Court placed in his hands process which commanded him to collect from appellee the sum paid by it, and he did so.

His holding of the money when collected was as agent for the county as fully as would be the holding of the county treasurer. Neither of them using money in their official capacities as agents for the county could controvert its right on the ground that the claim for taxes on which received was illegal.

Admitting that it was necessary for appellee to show that appellant received the money, we think this was sufficiently shown by proof that it was paid to the collector authorized by law and by the process he bore from the County Commissioners Court to collect taxes due to the county and to collect the particular tax claimed from appellee. Such proof makes at least a prima facie case entitling appellee to recover, and it was not incumbent on it to go further.

Appellee claims that judgment should be rendered in its favor for interest on the sum paid, the court below having refused to allow interest.

Interest in this character of case is allowed as damages, and we see no reason why a county should not be subjected to the same measure of damages as would be an individual who had received and detained the money of another.

It has been held where taxes were illegally demanded and paid under protest that interest should be allowed from time of payment. Glass Co. v. City of Boston, 14 Metc., 190; Shaw v. Inhabitants, 7 Cush., 445; Atwell v. Zeluff, 26 Mich., 118.

This seems to us the reasonable rule, and the judgment of the court below will be reversed and judgment here rendered for appellee for $1949.60, with interest thereon at the rate of eight per cent per annum from July 13, 1877, together with all costs incurred in the court below and in this court.

*Reversed and rendered.*

Opinion January 25, 1889.