BAKER et al. v. DRUESEDOW, Tax Collector, et al. (No. 7339.)

(Court of Civil Appeals of Texas. Galveston. June 28, 1917. On Motion for Rehearing, Oct. 11, 1917.)

1. TAXATION ⬚390(1)—RAILROADS—INTANGIBLE PROPERTY—EVIDENCE—SUFFICIENCY.

Evidence *held* to show that the railroad had no intangible property taxable in Texas, and that the fixing of values on intangible property by the state tax board was an arbitrary finding of values that did not exist.

2. TAXATION ⬚390(2)—RAILROADS—INTANGIBLE PROPERTY.

Vernon's Sayles' Ann. Civ. St. 1914, art. 7420, as to taxation of railroad property, does not require the tax board to fix the entire value of the property by adding the value of the capital stock and the mortgage indebtedness but must adopt that method unless it seems unfair or unjust.

3. TAXATION ⬚390(2)—RAILROADS—INTANGIBLE PROPERTY.

Under such statute, it is within the power of the court in proper cases to determine the real value of the railroad by capitalizing its net earnings at a reasonable interest rate.

4. TAXATION ⬚390(2)—RAILROADS—"INTANGIBLE VALUES."

The intangible values of a railroad company are the values of the railroad property over and above the value of its physical assets which intangibles ordinarily result from profits of its business as actually conducted.

5. TAXATION ⬚390(2)—RAILROADS—POWERS OF BOARD.

Vernon's Sayles' Ann. Civ. St. 1914, art. 7420, as to taxation of railroad property does not authorize the state tax board arbitrarily to fix the intangible values of a railroad if the rendition of the physical property for taxation has been made at less than fair and just value.

6. TAXATION ⬚611(4)—IMPROPER VALUES—RELIEF—INJUNCTION—PARTIES.

Where the tax board made an improper valuation of railroad property for taxation and the railroad sought injunction restraining the certification, but the suit was dismissed and later the railroad sought injunction solely against the county, attempting to enforce the assessment without joining state tax board, there was no fatal defect of parties.

7. JUDGMENT ⬚570(13)—RES ADJUDICATA—MATTERS CONCLUDED.

A judge's order, refusing a temporary injunction, after which plaintiff dismissed its suit, is not res adjudicata of the right of the petitioners to have an alleged illegal assessment of taxes enjoined.

8. TAXATION ⬚611(4)—VOID ASSESSMENTS—INJUNCTION—PARTIES.

The state tax board, having certified its findings assessing railway property to the various counties, was not a necessary party to a suit to enjoin the collection of taxes levied on their assessment which was void and illegal.

9. TAXATION ⬚608(6)—COLLECTION—INJUNCTION—MISTAKE—EFFECT.

The mere fact that the county board in assessing railroad tangibles made the levy too low did not affect the railroad's right to enjoin collection of the tax on intangible property certified to the county by the state board.

10. TAXATION ⬚47(4)—RAILROADS—INTANGIBLE PROPERTY—STATUTES—VALIDITY.

The amendment of the railroad intangible tax law (Acts 29th Leg. c. 146) by Acts 30th Leg. (1st Ex. Sess.) c. 17, so as to provide for a local tax on intangible assets "in addition to the ad valorem taxes on intangible properties" was not void as providing dual tax, inasmuch as the phrase "ad valorem tax on intangible property" was a mere clerical error, and should have been "ad valorem tax on tangible property."

On Motion for Rehearing.

11. EVIDENCE ⬚113(5) — VALUE — ADMISSIBILITY.

In suit by a railroad for reduction of its assessment, testimony as to the value of real estate abutting upon that owned and occupied by the railway was admissible to show the value of the land owned by the railway and not devoted to railway purposes.

Appeal from District Court, Harris County; J. D. Harvey, Judge.

Suit by James A. Baker and another, as receivers for the International & Great Northern Railway Company, against Karl L. Druesedow, Tax Collector, and others. Judgment for defendants, and plaintiffs appeal. Reversed and rendered.

On motion for rehearing. Motion denied.

Wilson, Dabney & King, of Houston, for appellants. Sewall Myer, of Houston, and B. F. Looney and Luther Nickels, both of Austin, for appellees.

PLEASANTS, C. J. This suit was brought by the appellants, as receivers for the International & Great Northern Railway Company, against appellee, Druesedow, tax collector of Harris county, and the county judge and members of the commissioners' court of said county, to restrain the collection of the tax assessed against the International & Great Northern Railway Company upon the value of the intangible property found by the state tax board to be owned by said road and apportioned by said board to Harris county. The taxes assessed upon said intangible property so apportioned to Harris county, the collection of which is sought to be enjoined by this suit, amount to the sum of $6,605.34.

Plaintiff's petition is necessarily voluminous, and it would serve no useful purpose to set out its allegations at length, or to give the substance of all of them. The tax is attacked as illegal, and its collection asked to be enjoined upon the ground, among others, that the railway company had no intangible value upon which the tax could be levied. It is charged, in substance, that the valuation of the whole intangible property of the railway at $10,743,223 by the state tax board was the arbitrary fixing and attempting to create value that had no actual existence. We adopt the following summary of

most of the material allegations of the petition, which we copy from appellants' brief:

"And that in finding the same did exist, the board did not endeavor, in the words of the statute, 'to bring about a just, fair, equitable and lawful valuation,' but did state the existence of intangible property which did not exist, and against all evidence, upon a deliberated plan to suppose the existence of such fictional property, and that the board did act for the purpose of subjecting to illegal taxation the properties of the International & Great Northern Railway, and for the purpose of collecting out of these properties, under the security of tax liens and preferences created by law, great sums of money because of the claimed intangibles."

It was further charged that the railway had no intangibles, but that if it had any, which is not admitted, but denied, then that they were of no such value as stated by the tax board; that the plaintiffs were grossly discriminated against in the valuations made, by discrimination in favor of other and competing railroads arbitrarily and wilfully made, and that the board, by a false formula and by methods which no reasonable mind could in good faith follow, and through gross error and mistake, as well as by deliberate plan, did make this assessment.

It is then alleged that plaintiffs, in response to a notice issued by the tax board under the provision of the statute to show cause why the preliminary assessment should not be made final, appeared before said board, and in writing and orally protested against the preliminary assessment and mathematical formula which the board applied in ascertaining the intangible values of the railway, and requested the board to explain the formula and the board's process in making the valuation. The board refused to explain its process, or to state the basis of its action, and on what basis or evidence it was acting in making this assessment, and refused to state why, in the formula, they had valued the stock of the insolvent and foreclosed railroad at $12,934,533, its par being $4,822,000, except that the board insisted that the formula was correct.

At this hearing no evidence was offered in support of the board's action, and no reason given therefor, except the formula, but the plaintiffs proved without controversy the following facts:

"(a) The amount of stocks and bonds of the railway outstanding on December 31, 1914, including equipment notes, all taken at par, was $32,154,000, of which $4,822,000 was stock and the railroad commission's valuation was $32,-471,027.05, to which might be added additions and betterments not then valued by the railroad commission of book cost of $1,542,065.02.

"(b) The railroad paid interest at 6 per cent. on its first mortgage bonds amounting to $11,-290,500, and partly out of receivers' certificates, and that the second mortgage had been foreclosed and interest on its bonds was in default.

"(c) The tax board was placing a premium of $8,112,533 on the capital stock of par $4,822,-000, although this stock had been foreclosed and was worthless.

"(d) The properties had been foreclosed in 1910–11, and sold out, and unsecured debts of over $7,000,000, and third mortgage bonds of approximately $3,000,000, and a stock capitalization of $9,755,000 were eliminated and thrown away.

"(e, f, g) The net income above operating expenses for 1914 was $65,405, which would capitalize at 7 per cent. $934,361, and for the calendar year of 1913, $1,153,660.92, which would capitalize at 7 per cent. $16,523,727.43, and for the calendar year of 1912, $2,084,149.50, which would capitalize at 7 per cent. $29,773,564.28. It was shown that no income had ever been paid on the stock of the railroad, except on preferred stock for one year, and that the taxes had increased on the properties from 1904 $127,-304.81 to, for 1914, $371,420.22."

"Other testimony was offered on said hearing by the plaintiffs, and they offered to furnish all information in their possession, and requested the board to make complete and full investigation, which it refused to do."

"The plaintiffs invoke the Constitution of the state of Texas and the laws of Texas against the illegal valuation and assessment, and section 1, of article 14 of the Amendments to the Constitution of the United States, in bar of the taxation attacked and the valuation made, and represent that if the court does not intervene, the property will be illegally taken and diverted to the extent of such illegal taxation from its lawful owners, or the persons entitled thereto, and that taxes will be levied and taken without due process of law and in violation of the equal protection of the law."

It is further alleged:

"That if any intangibles existed, which was not admitted, then that they were assessed and taxed at par, or enormously over par, by the state tax board's valuation, and that there existed in Harris county a scheme, custom, use, and design, participated in by the tax assessors and the defendants, whereby it was agreed, understood, or permitted that other tangibles in the county should be assessed at far below the true values, and a large amount of moneys, stock, bonds, loans, and choses in action and household furniture, subject to taxation, were understood and agreed not to be taxed at all, and were not taxed, and that it was understood and agreed or permitted that no intangibles, except those of railroads, should be taxed, and that by reason of these facts not less than one-half of the property in the county, subject to taxation, escaped all taxation whatever, and that tangibles were taxed at not over 38 per cent. of their true value, or true cash and market value, and that all of these undervaluations and all of these permissions of property to escape from taxation were done systematically by the defendants and the Board of Equalization and the tax assessor, and were intentional and arbitrary, whereby it was asserted that the plaintiffs were unjustly, arbitrarily, and willfully discriminated against, even if the International & Great Northern Railway had intangible values, which was not admitted, wherefore, adhering to the first branch of this case and subject to the same, the plaintiffs claim that if they had any intangibles, they must be taxed in Harris county on a basis of the taxation of the property of others in this county, also taking into consideration the failure and refusal of the taxing authorities to value or tax great bodies of property. Upon this branch of the case the plaintiffs invoked the Constitution of the state of Texas, and its laws, against such illegal valuations, assessments, and discrimination, and section 1 of article 14 of the Amendments to the Constitution of the United States, and represented that, if the court did not intervene, the property would be illegally taken and diverted to the extent of the illegal taxation by reason of such discriminations.

"Plaintiffs prayed for a temporary injunction (which was never sued out) and that upon final trial the defendants and their successors be forever enjoined from collecting the taxes in litigation, and that in the event the court should hold that some parts of the taxes in controversy were due, and not all, then that the amount should be ascertained upon the principles set out above, but this was subject to all of the contentions of the plaintiffs, as above made, that there were no taxes due. The plaintiffs prayed for the removal of every cloud or burden resting upon the properties of the railway by reason of these illegal claims, and for general relief."

The defendants answered first by pleas in abatement, setting up proceedings instituted in the District Court of the United States for the Southern District of Texas against the state tax board seeking to enjoin said board from certifying to the various county tax assessors the intangible valuations attacked in this suit, which proceedings and the judgment of said court denying plaintiffs' prayer for temporary injunction are pleaded as res adjudicata of the cause of action asserted in this suit. The defendants further pleaded:

"That, in addition to the above and foregoing pleas in abatement, these defendants say that this cause of action should and ought to abate, for the following reasons, to wit:

"(a) Because plaintiffs have an adequate remedy at law, and because there is no threatened injury which will result in irreparable damage to plaintiffs.

"(b) Because this suit is, in effect, a suit against the state of Texas, and permission has not been given by the state of Texas to the plaintiffs to file this said suit.

"Wherefore, these defendants say that this suit should abate, be dismissed, and held for naught."

These pleas are followed by a general demurrer and special exceptions to all of the material allegations of the petition, and by general and special denials of said allegations. The answer further set out at great length facts showing that the total valuation of the railroad properties is less than the total valuation including intangibles fixed by the state tax board, and avers that, this being true, the plaintiffs cannot be heard to complain that intangible values have been assessed, even if no such values exist. The following paragraphs of the answer show this contention of defendants:

"By chapter 4, tit. 125, R. S. 1911, it is made the duty of the state tax board to diligently inquire into all facts relative to railroad values so as to enable it to determine the *true value* of such properties, and, from all information which it is able to secure, the board is charged with the duty of finding (1) 'the *entire value* of the property (of the company, etc.);' (2) 'the true value of the tangible property'; and it is then required to subtract the latter amount from the former 'and the *residue and remainder of value* shall be by said state tax board fixed, determined, and declared as the true value of the intangible properties.' Article 7420. As aforesaid, the state tax board had the right to rely upon the sworn statements of the plaintiffs' agents, stating the 'full and true value' of the tangible properties and the classification of their properties made thereby, and,

if said sworn statements were untrue, and if error was made in the classification and in the amount of value of the tangible properties, by reason thereof plaintiffs are now estopped to take advantage of the same, and for such relief defendants pray. That as aforesaid the 'entire value' of plaintiffs' properties is and was far in excess of the sum of $40,000,000, as will more specifically be alleged hereinafter. And defendants, therefore, say:

"First. That the entire properties of the plaintiffs in the state have been assessed for taxation, both upon the tangible and the intangible assets, at much less than 50 per cent. of their true value.

"Second. That their intangible properties have been assessed by the state tax board and the various county tax assessors at much less than 40 per cent. of their real values.

"Third. That the proportion of the sum of their intangible values properly belonging to this county has been assessed at much less than, or at least not exceeding, the proportion of value at which other property in the county has been assessed.

"Fourth. That even if a mistake has been made in classifying plaintiffs' property into 'tangibles' and 'intangibles' and that a larger proportion of the entire values should be regarded as belonging to the 'tangibles,' still the true 'intangibles' properly belonging to this county for taxation purposes have not been assessed at a greater proportion of their value than other property in the county.

"Fifth. That if it be true, which is not admitted, but denied, that the state tax board did not use logical formulas, or methods of calculation, and did not correctly understand the information in their possession and its application, nevertheless the results of their action and calculations are not erroneous, and therefore their mistakes, if any, are immaterial and afford no basis for relief to the plaintiffs. * * *

"As aforesaid, defendants say that the total value of all of the properties of the plaintiffs justly subject to taxation within the state exceeds the aggregated assessments thereof by the various county taxing authorities and the state tax board; and in this connection defendants show unto the court the following:

"First. The total valuation of tangibles and intangibles for taxation is the sum of $24,086,719.

"Second. The "book cost" of the properties of the plaintiffs up to June 30, 1914, as shown by their records, was the sum of $43,818,430.79, representing actual investments, and since that time a large amount of money, the exact amount of which is to defendants unknown, has been invested therein, which records are in the possession of the plaintiffs, and they are hereby notified to produce the same upon the hearing hereof."

It is further averred, in substance, that the total assessment of plaintiffs' property in Harris county, including the intangible values, is at a less per cent. of its true value than the assessed valuation for other property in said county, and therefore plaintiffs show no equity and no right to complain of the taxes which they seek to enjoin. The defendant, Druesedow, filed a cross-bill for recovery of the taxes due the county according to the assessment rolls.

Plaintiffs, by supplemental petition, excepted to the defendants' answer. The pleas in abatement, and all of the demurrers were overruled. The cause was tried without a jury and judgment rendered in favor of defendants that plaintiffs take nothing by their

suit, and that the defendant, Druesedow, recover of plaintiffs for the use and benefit of the state of Texas and Harris county the sum of $6,605.34, and the further sum of $61.27 interest from February 1, 1916.

The undisputed evidence adduced upon the trial shows that, upon a hearing by the state tax board on June 18, 1915, after notice to plaintiff to appear and show cause why a valuation of the intangible property of the railway company theretofore made by the board should not be made final, the board, after considering plaintiffs' protest and the evidence offered by them, adopted its corrected preliminary valuation, fixing the valuation of said intangibles at the sum of $10,743,223, and apportioned and certified said valuation to the various counties in accordance with the provision of the statute. The amount so apportioned and certified to Harris county was $603,227. The state and county taxes assessed in Harris county on said sum amount to $6,605.34. At said hearing plaintiffs showed that the valuation of the physical properties of the railway company as fixed by the State Railroad Commission some time previous to this hearing was $32,471,027.05, and that since said valuation was made, betterments valued at $1,542,065 had been added to the property, making the aggregate valuation of the tangible property of the railway $34,013,092.07.

The aggregate of the stocks, bonds, and lien obligations of every character of the railway was shown to be $32,154,000. It was further shown that the properties now owned by the railway company, except some additions which have been since made, were sold out under mortgage foreclosure in 1911 in a suit brought by bondholders of the now defunct International & Great Northern Railroad Company, and bought in by the present International & Great Northern Railway Company, which was organized for the purpose of purchasing and operating the sold-out company. By this foreclosure the capital stock of $10,000,000 and indebtedness to the amount of $8,000,000 of the old company were wiped out. The present company was placed in the hands of receivers on August 10, 1914, for default on its mortgage indebtedness and decree of foreclosure had been entered on May 17, 1915.

The properties were shown to have been well managed for the past 14 years, and the net average income during that time was 4.25 per cent. on the Railroad Commission's valuation. The average net income for the year 1912, which was shown to be the best year in the history of the properties, was $2,084,149.50, which, capitalized at 7 per cent., the average rate of interest in the section through which the railway operates, would show a valuation of $29,743,564.28. The net income for 1913 at 7 per cent. would capitalize $16,523,727.43. The net income for the year 1914 at 7 per cent. would capitalize $934,361.

All of the facts above stated were shown in the trial in the court below by undisputed evidence. At the hearing before mentioned plaintiffs in writing requested the board to give the data or information on which it based its findings of the value of the intangible property of the railroad. In response to this request, it furnished the following formula, which it had used in ascertaining said value:

### International & Great Northern Ry. Co.

| | | | |
|---|---|---|---|
| Gross receipts, | 1911 | ............ | $ 9,782,165 |
| " " | 1912 | ............ | 11,254,327 |
| " " | 1913 | ............ | 10,902,041 |
| " " | 1914 | ............ | 9,645,785 |
| Total | | ................................. | $41,584,318 |
| $41,584,318÷4 | | ................................ | 10,396,079 |
| Capital stock issued and outstanding | | ............:........ | $ 4,822,000 |
| | | | 26,181,500 |
| Total capitalization | | .................... | $31,003,500 |

$10,396,079÷31,003,500= 33.53 ratio
                 12.50 ratio T. & P.
33.53÷12.50     =268.24 ratio
$4,822,000×268.24 .................$ 12,934,533
Mortgage debt at par........... 26,181,500

| | |
|---|---|
| True value | ................................. | $39,116,033 |
| Physical value (assessed value) | .......... | 28,372,810 |
| Intangible value | ........................... | $10,743,233 |

The Texas & Pacific Railroad Company ratio used in this formula was obtained by the following formula applied to the earnings, indebtedness, and tangible values of that road:

### State Tax Board, Austin, Texas.
### Texas & Pacific Railroad Co.

| | | | |
|---|---|---|---|
| Gross receipts, | 1911 | ............ | $11,079,618 |
| " " | 1912 | ............ | 12,341,684 |
| " " | 1913 | ............ | 12,381,305 |
| " " | 1914 | ............ | 11,745,562 |
| Total | | ................................. | $47,548,169 |
| $47,548,169÷4= | | | 11,887,042 |
| Stock issued and outstanding... | $38,763,810 | | |

### Bonded Debt.

First mortgage (par) $24,992,975
First mortgage " 4,970,000
Second mortgage (par) ................ 24,987,036
                    $54,950,011
Secured interest accrued ........... 1,498,500

| | |
|---|---|
| Total | ....................... | $56,488,511 |
| | 56,488,511 |
| Total capitalization | .................... | $95,212,321 |

$11,887,042÷95,212,321=12.48 ratio
38,763,810×12.50—Val. Stk. ...... 4,845,476
Lien obligations ................ 56,448,511
True value, Texas share, $61,293,987×57.60 $35,305,336
Physical value ............................. 15,588,147

| | |
|---|---|
| Intangible value | ........................... | $19,717,189 |

In both of these formulas it is apparent the decimal point has been misplaced. In the International & Great Northern formula the figure 33.53 should be .3353; 12.50 should be .125, and 268.24 should be 2.6824. In the Texas & Pacific formula 12.48 should be .1248, and 12.50 should be .125.

The method followed by the board in ascertaining the amount of intangible values of the railway company for the purpose of taxation and the explanation of the formula above set out and their use in fixing said values is stated by Mr. Bagby, state tax commissioner, as follows:

"That in any mathematical calculation or formula, the two main factors which he had endeavored to find in order to arrive at the value of intangibles were the real value and the physical value of the railroads; that is, the real value of the entire property as a whole, and that he had done this in the case of the International & Great Northern Railway in connection with its valuation for 1915, and that the valuation found by the board of $39,999,000, plus represented his best judgment as to the true value of the entire properties upon all the information which he had before him, and that the facts showed that that was the proper valuation in the judgment of the board, and that he was under no coercion from any source in making that valuation, and that it was hard to get anybody to discuss the intangible matters with him, and that the valuation of the property of the International & Great Northern for 1915 took into consideration the mathematical calculation to be used, and that, disregarding the mathematical calculation and looking only to the result that the valuation reflects the best judgment of which the witness was capable under all the information he had, and that he saw no conduct upon part of any other members of the board indicating that they were not exercising their best judgment, and so he would say the same as to every one of the railroads. That the representatives of the International & Great Northern Railway had appeared before the board on June 18, 1915, but that these representatives did not offer the board any facts not disclosed by the records already before the board. That their representations consisted partly of facts and partly of arguments, with perhaps three witnesses, the auditor, the tax man, and the head of the traffic department testified, but what they said did not change the opinion of the board, and that, as far as he was concerned, he went into the hearing with an open mind and gave a patient hearing, or tried to.

Cross-examination by the plaintiffs:

"The law says that the intangible assets of a railroad is the difference between its physical value and real value, or, in other words, is the metaphysical value, if any. The witness said that he was a fairly good arithmetician and fairly well knew the 'rule of three' and common and decimal fractions. The witness then testified the various formula which had been introduced in evidence from each railroad emanated from the state tax board in 1915, and stated that he, for the most part, made these calculations, based upon a formula of the Texas & Pacific Railway, with the assistance of his associates; that they first got gross receipts of the Texas & Pacific Railway, for four years, divided that by four, then got the total of the capital stock and bonds and found the ratio between the gross receipts and the capital, average gross receipts and the capital stock, and found it to be 12½ or 12.48; that is ⅛. That they then took the capital stock and multiplied it by 12½ or ⅛; that is, by .125: that it was first found that the Texas & Pacific was the only railroad in the state that had a marketable value for its stock, the Wall Street bulletin showing a quotation on it at either 12½ per cent. or 16 cents on the dollar; that then the board took the capital stock and multiplied it by 12½ per cent. and found out what they thought was the real value of the

Texas & Pacific and added the bonded indebtedness to this real value of the Texas & Pacific capital stock, and took that for the total true value of the railroad, and then subtracted the physical value and took the balance for the intangible value.

"Coming now to the International & Great Northern Railway. The witness stated that he found the average gross receipts for four years, then the difference between the bonded indebtedness, and then applied the Texas & Pacific formula and multiplied the difference of its ratio between its capital stock and divided by 12½ per cent. (126). The gross receipts for four years were $41,000,000 of the International & Great Northern Railway, divide it by four, and it averages $10,000,000. The capital stock issued and outstanding is $4,822,000 and the mortgage debt at par was $26,000,000 in round numbers, or in round numbers about $31,-000,000 for stocks and bonds; that then they divided the average gross income of $10,369,000 by the $31,000,500, and that gave the ratio of the capital stock and gross receipts, and 'we divided, then, the ratio of the capital stock of the International & Great Northern Railway and gross receipts, by the ratio of the Texas & Pacific, 12½.' That would make a ratio of 2.6, and we multiplied the $4,822,000 by that and added the mortgage debt at par, then subtracted the physical valuation and found the intangible values of $10,743,000."

It is shown from the whole evidence that the alleged intangible values of the railway company were found by increasing the par value of its capital stock by the application of the formula and reducing the value of its physical properties below the amount fixed by the state railroad commission, and shown by the undisputed evidence to be their fair value, and from the sum of the mortgage indebtedness and the value of the stock so fixed by the board deducting the decreased value of the physical properties. Unless this process can be held sufficient to show that the railway company has intangible values upon which the assessment can be based, there is no evidence of the existence of said values.

It was shown by the testimony of Mr. Arthur Lafevre, a mathematical expert and teacher of the highest standing and large practical experience, that the formulas used by the board could not possibly show the value of the railway's stock, nor in any way aid in ascertaining such value. The Texas & Pacific formula is based upon the theory that the ratio of average gross income to total capitalization has a bearing upon the value of capital stock. It is mathematically certain that since the average gross receipts of a railway company never exceeds its capital, the ration between the two must always be expressed by a fraction. It follows that when the par or face value of the capital stock is multiplied by this ratio to determine its value, the result will show the value of the stock to be less than par. This was the result of the application of the Texas & Pacific formula by which the value of the stock of that road was shown to be 12½ per cent. of par. The fortuitous circumstance that at the time this formula was applied

for the purpose of ascertaining the value of the stock of that road, the stock was selling on the market at 12½ per cent. cannot be regarded as showing that the value of railroad stock can be ascertained by multiplying its par value by the fraction representing the ratio of its average gross receipts to its capitalization. It is manifest that the use of such a formula would, in many cases, greatly and unnecessarily reduce the value of the stock. The board realized this, and applied that formula to no other road.

The use of the Texas & Pacific ratio in the formula applied to the other roads for the purpose of increasing the ratio obtained by the application of such formula is purely arbitrary, and could not, upon any rational theory, demonstrate the value of the stock. Such process must necessarily result in great discrimination in the valuation of the stocks of the different roads, the valuation varying in the proportion to the variation of the ratio of the capital stock to the total capitalization of the various roads. That the application of the formula did produce discrimination between the various roads is shown by the undisputed evidence in this case.

[1] There have been no sales of the stock of the International & Great Northern Railway Company, and no market quotation of its value was shown. An expert witness on market value of stocks and securities testified that the stock of a railroad having the capitalization, indebtedness and earning capacity of this railway had no market value. Our conclusion of fact from a consideration of all the evidence is that the International & Great Northern Railway Company had no intangible property taxable under the laws of this state when the taxes sought to be enjoined were assessed thereon, and the fixing of such values by the state tax board was the arbitrary finding of values that did not exist.

Upon these facts appellants are entitled to protection against the collection of the taxes unless such right is defeated upon grounds urged by appellees, and which will be hereinafter considered.

Our statute providing for the assessment for taxation of the intangible values of railroad companies is a just and necessary law, and its constitutionality has been upheld by the decision of our Supreme Court and the Supreme Court of the United States.

The act provides, in substance (Vernon's Sayles' Civ. Statutes, art. 7420), that unless the evidence or information adduced before the state tax board shall make it appear improper or unjust, the board in fixing the true value of the entire property of the railroad shall take as a basis the aggregate market or true value of all of its shares of stock and add thereto the true or market value of all of its mortgage or lien indebtedness or other charge upon its property or assets, and the sum so produced shall be deemed the true value of the entire property. From this sum is to be deducted the true value of all the tangible property of the railroad, and the remainder shall be determined and declared to be the true value of the intangible property owned by the railroad. It then provides for the apportionment of this value of intangible property to the various counties through which the road operates in the proportion which the mileage of the road in each of the counties respectively bears to the entire mileage in the state.

[2, 3] It will be observed that under this statute the board is not absolutely required to fix the entire value of the property by adding the value of the capital stock and mortgage indebtedness, but is directed to adopt this method unless from the evidence before it such method should appear improper or unjust. It can readily be seen that in some cases this method would not be proper and just either to the railroad or the state, and the capitalization of the net earnings of the road at reasonable interest rate would be the proper and just method. In the case of Railway Co. v. Shannon, 100 Tex. 379, 100 S. W. 138, 10 L. R. A. (N. S.) 681, our Supreme Court defines the intangible values of a railroad as follows:

"The intangible values of a railroad company are the values of the railroad properties [over and] above the value of its physical assets, which intangibles ordinarily result from profits of its business as actually conducted."

[4] This is, we think, a clear and accurate definition, and it seems to us that such intangible values can only be shown to exist by one of the methods above stated. But be this as it may, the evidence in this case shows that the board, in fixing the intangible value of the railway company, took the basis suggested by the statute, and unless the value of the capital stock fixed by the board can be sustained, there is no basis for any intangible values. We have found that the so-called "rule of three" formula, applied by the board to ascertain the value of the stock, cannot be so applied upon any mathematical principle or rational theory, and its general application produces unjust discrimination between railroads. There is no evidence upon which the value of the stock fixed by the board can be sustained, and when called upon and urged by the appellants upon the hearing before it to disclose what, if any, evidence or information it had which tended to disprove the showing made by appellants that no such values existed, the board only offered its "rule of three" formula.

Upon the trial in the court below appellees offered testimony showing that the value of the tangible property was much greater than the value at which it was assessed for taxation, and greater than the valuation placed thereon by the state Railroad Commission. This testimony does not tend to sustain the intangible valuation found by the state tax

board. It may be contended that the addition of value to the physical properties of the road increases the value of the capital stock, but this fact could have no effect upon the intangible value, for the obvious reason that in determining said value by the method authorized by the statute and adopted by the board, the true value of the tangibles must be deducted from the value of the stock and mortgage indebtedness.

[5] This arbitrary action of the board was doubtless due to the misconception of the scope of the statute creating the board and of the power conferred upon it by the statute. The pleadings of the defendants and the testimony of the tax commissioner show that the board construed the statute as authorizing it, when it deems the rendition of the physical properties of a railroad for taxation has been made at a valuation less than its fair and just value, to add to this value by an "arbitrary" fixing of intangible values of such railroad. It is clear that the statute has no such meaning, and cannot be construed as conferring any such power upon the state tax board. It has no power to pass upon, correct, or in any way change valuation of tangible property as fixed in the rendition and assessment of such property for taxation. Its right to fix the value of tangible property is only for the purpose stated in the statute of deducting the "true" value of such property from the aggregate value of the stock and mortgage indebtedness, and thus determine the value of the intangible property of the road. Any statute which conferred upon the state tax board the power to value and assess tangibles as intangibles and apportion such values among the various counties of the state as provided in this statute would be clearly obnoxious to the provision of the Constitution which requires tangible property to be assessed in the county in which it is situated. Article 8, §§ 8–11, 14, State Constitution; Railway Co. v. Shannon, 100 Tex. 379, 100 S. W. 138, 10 L. R. A. (N. S.) 681. But it matters not what may have been the motive or cause of the illegal action of the board in arbitrarily fixing values of intangible property that did not, in fact, exist, appellant is entitled to relief against the collection of taxes levied upon such illegal assessment. In the case of Lively v. Railway Co., 102 Tex. 559, 120 S. W. 857, our Supreme Court says:

"It is not necessary that the officers in so discriminating should have intended specifically to injure the appellee or other railroad companies. It is sufficient that by their action they denied the appellee the equal protection of the Constitution and laws of the state. The intention with which the acts were done is of no consequence. Such deliberate action on the part of officers [which are] charged with the enforcement of the law (i. e., making an assessment) must be held to be the act of the state, and the appellee was entitled to relief against the enforcement of the excessive assessment."

In the case of Cummings v. Bank, 101 U. S. 153, 25 L. Ed. 903, the Supreme Court of the United States, in considering a case involving inequality in assessing values, says:

"Independently of this statute, however, we are of opinion that when a rule or system of valuation is adopted by those whose duty it is to make the assessment, which is designed to operate unequally and to violate a fundamental principle of the Constitution, and when this rule is applied not solely to one individual, but to a large class of individuals, or corporations, that equity may properly interfere to restrain the operation of this unconstitutional exercise of power. [The word "designed" as here used is not used as a synonym of "intended," but rather in the sense of calculated.] ·In Railroad & Telephone Co.'s v. Board (C. C.) 85 Fed. 305, it was said: 'It is conceded, and could not be controverted, that the bill contains no specific allegation of fraud on the part of the board of equalization. While I do not regard this as a controlling point at all in the case, it must be stated, to avoid misapprehension, that, although acting with perfect honesty, if the assessors or board of equalizers pursued methods calculated to bring about a substantial inequality in the * * * value of the properties here in question, as compared with other species of property in the state, the innocent intent in such a procedure would be no [legal] justification whatever, in law for a wrong result. Full legal responsibility is recognized for the necessary, legitimate, and natural result of acts and a systematic course of procedure, and an innocent mistake about the matter does not change the effect. For legal purposes, all persons are presumed conclusively to contemplate and intend the necessary and natural result of their acts. Agnew v. U. S., 165 U. S. 36 [17 Sup. Ct. 235, 41 L. Ed. 624]. If the board of equalization was under a duty to equalize, a mistaken view that such was not its duty could not change the law, and could not render a result legal which would otherwise be illegal.' In German National Bank v. Kimball, Collector, et al., 103 U. S. 732, S. C. of U. S., and 26 L. Ed. 469, the court says: 'It is held in these cases that when the inequality of valuation is the result of a statute of a state designed (i. e., the necessary operation of which is) to discriminate injuriously against any class of persons or any species of property, a court of equity will give appropriate relief, and also where, though the law itself is unobjectionable, the officers who are appointed to make assessments combine together and establish a rule or principle of valuation, the necessary result of which is to tax one species of property higher than others, and higher than the average rate, the court will also give relief."

In addition to the above authorities appellants' right to relief is sustained by the following cases: Galveston County v. Galveston Gas Co., 72 Tex. 517, 10 S. W. 583; Johnson v. Holland, 17 Tex. Civ. App. 210, 43 S. W. 71; State Board of Equalization v. People, 191 Ill. 528, 61 N. E. 339, 58 L. R. A. 513.

[6] The first contention of appellees in reply to appellants' brief is as follows:

"Since the state tax board, and no other official or body, representing the state of Texas as a whole is not a party to the litigation; since the state tax board has long since performed all of the duties laid upon it by law, and has certified the results of its valuations to the various counties, and had done so long before the filing of this suit; and since it was the duty of the appellants to enjoin said board from certifying said valuations before it did so, if there was error therein so that such error could be corrected; and since appellants attempted in the federal courts to secure such injunction and abandoned the attempt; and since the result of

a successful attack upon such valuation in this suit to which only the taxing authorities of Harris county are parties defendant would nullify the valuations certified by the state tax board to some 36 other counties and thus deprive each and all of such counties of such taxable values and also deprive the state of the whole of such taxable values—there is a fatal defect of parties, and the appellants are concluded from making such attack in this case."

There is no merit in this contention.

[7, 8] Appellants were, in our opinion, entitled to an injunction restraining the board from certifying the intangible values found by it to the various counties because, as we have before concluded, the finding of such values was without any evidence to support it, and was purely arbitrary. The record shows that they attempted to pursue this remedy by a suit filed in the federal district court, but upon a denial by the judge of that court of their application for temporary injunction they dismissed their suit. The order of the judge on a preliminary hearing refusing a temporary injunction is not res adjudicata of appellants' cause of action, and the trial court properly so held. The board having certified its findings to the various counties, no suit against it to enjoin such certification could have been brought when this suit was instituted, and it was not a necessary party to a suit to enjoin the collection of taxes levied on an illegal and void assessment made by it. Railway Co. v. Shannon, 100 Tex. 388, 100 S. W. 138, 10 L. R. A. (N. S.) 681; Chicago Union Traction Co. v. Board (C. C.) 114 Fed. 557; Raymond v. Chicago Union Traction Co., 207 U. S. 20, 28 Sup. Ct. 7, 52 L. Ed. 78, 12 Ann. Cas. 757; Pelton v. Bank, 101 U. S. 143, 25 L. Ed. 901.

[9] The trial court found, and there is evidence to sustain the finding, that, taking the Railroad Commission's valuation of the physical properties of the railway in Harris county as a basis, the total value of the property assessed against the railway in Harris county, including the intangible values, did not amount to a greater per cent. of the true value of the tangible property of the railway than the per cent. at which other tangible property in said county was assessed for taxation. Upon this ground the court held that the plaintiffs showed no equity and were therefore not entitled to relief against the collection of taxes upon intangible values, regardless of whether such intangibles existed. We do not think this holding is sound. The valuation of the tangible property of the road in Harris county was fixed by the officers of the county charged by law with that duty, and if they fixed such taxable valuation at a less per cent. than the value at which the property of the citizens generally in said county was assessed for taxation, this mistake cannot entitle the county to collect taxes upon property which the company does not own and which, in fact, has no existence.

[10] Appellants' contention that our present intangible tax law is unconstitutional by reason of an amendment to the statute enacted by the Legislature in 1907, after the decision of our Supreme Court upholding the constitutionality of the intangible tax statute of 1905, cannot be sustained. The section of the original act and the amendment thereof which appellants claim renders the law unconstitutional are as follows:

| Act of 1905. | Act of 1907. |
|---|---|
| "And every individual or association of individuals doing such business *shall, in addition to the ad valorem taxes on* tangible properties which are now imposed upon them by law, annually, beginning with the first day of January, A. D. 1906, pay a tax to the state for the year 1906, and for each year thereafter, on their *unrendered intangible assets* and property, and local taxes thereon, to the counties in which its business is or shall hereafter be carried on, which *additional* tax shall be assessed and levied upon such assets and property in the manner hereinafter provided." Acts 29th Leg. c. 146, § 1. | Every incorporated railroad * * * ferry, * * * bridge, * * * turnpike or toll company, * * * and every other individual, company, corporation or association doing business of the same character, in this state, *in addition to the ad valorem taxes on intangible* properties which are * * * or may * * * be imposed upon them, respectively, by law," shall pay an annual tax to the state, beginning with the first day of January of each year, "*on their intangible* assets and property, and local taxes thereon, to the counties in which its business is carried on; which *additional* tax shall be assessed and levied upon such intangible assets and property in the manner provided in this chapter." Acts 30th Leg. [1st Ex. Sess.] c. 17, § 1. |

Appellants claim that the amendment renders the law unconstitutional because it authorizes the levy of taxes on intangible property in addition to the ad valorem taxes on intangible properties which are or may be imposed by law, and thereby authorizes a double assessment of intangible properties. We do not think this is a proper construction of the amended statute. When the statute is considered as a whole, we think it clear that the word "intangible," where it first appears in the section of the amendment above quoted, was so written by clerical mistake, and that it was the manifest intention of the Legislature to there use the word "tangible," and therefore the amendment does not authorize a double assessment of intangible properties.

As before stated, we are of the opinion that the appellants upon the uncontradicted evidence were entitled to be relieved from the payment of taxes levied upon an arbitrary valuation of intangibles which had no existence in fact, and the trial court should have granted an injunction restraining the collection of said taxes.

It follows from this conclusion that the judgment of the trial court should be re-

versed, and judgment here rendered, granting such injunction; and it is so ordered.

Reversed and rendered.

## On Motion for Rehearing.

Appellees, in a motion for rehearing filed by them, very earnestly contend that we have erred in holding that the evidence in this case fails to show that the International & Great Northern Railway Company has any intangible property or intangible values subject to taxation under the laws of this state. No attempt is made in the motion to justify the holding of the tax board that the so-called "rule of three" formula, used by the board for the purpose of ascertaining the value of the stock of the railway company, demonstrated that the stock is worth the amount found by the board. It is urged, however, that the record does not justify our conclusion that the board relied solely upon the application of the formula to show the value of the stock, and that if the formula be discarded there is evidence to sustain the finding of the board as to the value of the stock, and that the railway company owned intangible property in this state of more than $10,000,000 in value.

We cannot agree with either of these contentions. We think the record as a whole shows conclusively that the board relied solely upon the mathematical result obtained by the application of the formula in fixing the value of the stock of the railway company, and the intangible values were found by the board by deducting from the aggregate of the value of the stock so found and the value of the lien indebtedness of the company, the value of its tangible property. Mr. Bagly, state tax commissioner, the only member of the state tax board who testified in the case, stated that in fixing the intangible values of the railway company the board considered all the evidence before it, but he failed to state what evidence the board had before it showing, or tending to show, that the railway company had any intangible value, and no such evidence was introduced upon the trial. He insisted that the use of the formula, as shown in our main opinion, was a rational and scientific method of arriving at the true value of the stock of the railway company. Upon cross-examination he was asked how stock that had never paid a dividend could be worth 2.68 times its face value, and if the board did not fix the value of the stock by applying the formula, and he replied: "Yes, sir; we did on the formula and stuck to the formula." As stated in our main opinion, the true value of the stock could not possibly be ascertained by the method or formula used by the tax board, and there is no evidence to sustain a finding that the stock was worth more than its face value. This being so, no intangible value is shown by subtracting the value of the tangible prop-

erty of the company from the sum of the value of the stock and lien indebtedness of the company. In our main opinion we say that the value of the tangible properties of the railway company fixed by the state Railroad Commission was "shown by the undisputed evidence to be their true value." This statement is not accurate. What we had in mind and intended to say was that the undisputed evidence shows that the value of the tangible properties of the railway company was not less than the amount fixed by the Railroad Commission. The only evidence tending to show that it was worth less was the tax rendition values, made by the company. The great preponderance of the evidence shows that the value was largely in excess of the amount fixed by the Commission.

Unless we adopt appellees' theory that the tax board is authorized under the intangible tax statute of this state to assess as intangible values the value of tangible property of a railroad in excess of the value for which the tangibles are assessed for taxes, or that such board can make an "arbitrary" finding of tangible values, the finding of the board that the International & Great Northern Railway Company had intangible property of any value at the time the assessment in question was made cannot be sustained. We cannot adopt either of these theories of appellees, and feel constrained to adhere to the conclusions stated in our main opinion.

Appellants have presented a motion asking us to correct that portion of our main opinion in which we state that there was evidence to sustain the finding of the trial court:

"That, taking the Railroad Commission's valuation of the physical properties of the railway in Harris county as a basis, the total value of the property assessed against the railway in Harris county, including the intangible values, did not amount to a greater per cent. of the true value of the tangible property of the railway than the per cent. at which other tangible property in said county was assessed for taxation."

The ground on which appellants complain of this statement is that the evidence upon which the trial judge based his finding as to the value of the tangible property of the railway in Harris county was the testimony of Mr. Parker as to the cost of reproduction of the tracks, depot building, and other permanent improvements used by the railway in the operation of its road in said county, and the testimony of the witness Kelly as to the value of real estate abutting upon that owned and occupied by the railway. The contention is made that the testimony of neither of these witnesses was admissible for the purpose of showing the value of the railway property, and that the finding of the trial court based upon such testimony, which was admitted over the objection of appellants, was without evidence to support it.

[11] We did not, in our main opinion, pass

upon appellants' assignments complaining of the admission of the above-stated testimony, and we do not find it necessary now to decide the questions presented by said assignments. The trial court expressly states in his findings of fact that he did not consider the testimony as to the value of abutting property in fixing the value of land held and used by the railway company for railway purposes only, but only considered such testimony in fixing the value of land owned by the railway which is not now used for such purposes and may never be so used, and which "is reasonably adapted to use for general commercial purposes." We think this testimony could be properly considered in finding the value of real estate owned by the railway company, but not used for railway purposes, and which may never be needed for such use. There was testimony other than that of Mr. Parker, above stated, which sustains the findings of the trial court as to the value of the railway tracks, buildings, and other superstructures in said county, and we cannot say that the findings of the court were based in whole or in part upon the testimony of Mr. Parker.

Appellants further complain of our holding that the intangible tax statute, under which the assessment complained of in this suit was made, is not unconstitutional on the ground that it authorizes a double assessment of intangible property. We do not care to add anything to what was said in our main opinion in overruling the assignment presenting this question.

Our conclusion is that both motions should be refused; and it has been so ordered.